**Robert R. DONLAN, Plaintiff,**

v.

**Howard M. SMITH, et al., Defendants.**

**Civ. Nos. H–84–3204, H–84–3205 and H–84–3651.**

United States District Court,
D. Maryland.

Sept. 17, 1986.

Charles J. Zauzig, III, Woodbridge, Va. and A. David Zerivitz, Baltimore, Md., for plaintiff.

Paul F. Kemp and Catterton, Kemp and Mason, Rockville, Md., for defendant Beverly Donlan.

Alvin I. Frederick, Lloyd J. Snow and Eccleston and Seidler, Baltimore, Md., for defendant Steinberg.

Ralph S. Tyler, Asst. Atty. Gen., for defendant Howard M. Smith.

Linda D. Berk, Asst. Co. Atty. for Montgomery County, Rockville, Md., for defendants Frank Main and Jim Griffis.

## MEMORANDUM AND ORDER

ALEXANDER HARVEY, II, Chief Judge.

The husband in divorce proceedings pending in a state court has brought these federal court actions against his wife, his wife's attorney, the Clerk of the state court and two county deputy sheriffs. Robert R. Donlan, the plaintiff, is here seeking an injunction, declaratory relief and compensatory and punitive damages under 42 U.S.C. § 1983 and under state tort law. The three separate civil actions filed by plaintiff here have been consolidated by Order of this Court.

Presently pending in these consolidated actions are motions for summary judgment filed by all of the named defendants. Plaintiff filed suit because he had been arrested by two Montgomery County deputy sheriffs pursuant to a Writ of Body Attachment issued by a clerk of the Circuit Court for Montgomery County (hereinafter the "Circuit Court"). The Writ of Body Attachment was issued at the request of the plaintiff's former wife, Beverly A. Donlan, after plaintiff had failed to purge himself of contempt by paying her $1,000 in alimony arrearages, as ordered by the Circuit Court. The five named defendants are Howard M. Smith (Clerk of the Circuit Court), Beverly A. Donlan (plaintiff's former wife), Harvey B. Steinberg (attorney for Beverly Donlan) and Sergeant Frank Main and Corporal Jim Griffis (deputy sheriffs of the Montgomery County Sheriff's Department).

Following the conduct of discovery proceedings, all defendants have moved for summary judgment. Voluminous memoranda, affidavits, and exhibits have been filed by the parties in support of and in opposition to the pending motions for summary judgment and have been carefully reviewed by the Court. No hearing is necessary. See Local Rule 6. For the reasons to be stated herein, the motions for summary judgment filed by the defendants will all be granted.

## I

### The Facts

This federal action represents but a single episode in the bitterly contested divorce and related proceedings which were commenced in the Circuit Court in 1979 and which are still pending. Donlan v. Donlan, Equity No. 66084 (Cir.Ct. for Montgomery County) was filed in February 1979 by Beverly Donlan, plaintiff's wife, and there have been extensive legal proceedings since then. On January 11, 1983, Judge Stanley B. Frosh of the Circuit Court granted Beverly Donlan a divorce from Robert Donlan. Judge Frosh ordered that Robert Donlan pay alimony in the amount of $1,400 per month to his former wife. Beverly was also given custody of their minor child Margaret Donlan, and Robert Donlan was ordered to pay $350 per month in child support for four months, after which Margaret would have reached the age of eighteen. Robert Donlan was also ordered to pay Beverly Donlan $5,000 in attorney's fees.

On February 28, 1983, Beverly Donlan filed a petition in the Circuit Court asking that Robert Donlan be found in contempt because he had paid her only $400 for each of the months of January and February of 1983. Acting on the petition, the Circuit Court ordered Robert Donlan to show cause why he should not be found in contempt and scheduled a hearing before a Domestic Relations Master. This hearing was held on April 21, 1983, and both Robert and Beverly Donlan appeared and presented testimony and other evidence.

In a report filed with the Circuit Court on June 21, 1983, the Domestic Relations

Master found that Robert Donlan, an attorney employed by the United States Department of Justice, had the means to comply or substantially comply with the Court's Order that he pay alimony and child support. Furthermore, the Master found that Mr. Donlan's payment of $400 per month was not an honest, good faith effort to comply with the Court's Order, and he further found that Donlan's failure to pay the arrearage in his obligations to Mrs. Donlan required a finding of contempt. The Master concluded that Robert Donlan should be required to pay $1,000 by July 8, 1983 in order to purge himself of contempt. Copies of the Master's Report were sent to both Robert and Beverly Donlan.

Robert Donlan filed exceptions to the Master's Report, which were overruled by the Circuit Court on July 19, 1983. That same day, Judge Cahoon of the Circuit Court signed the Order proposed by the Master, which found Robert Donlan to be in contempt but permitted him to purge himself of contempt by paying $1,000 to Beverly Donlan on or before July 8, 1983, while also remaining current in his support payments. The Circuit Court, because of Robert Donlan's having been found in contempt, also sentenced him to be confined at the Montgomery County Detention Center for 120 days, during which time he could purge himself of contempt.

Beverly Donlan then filed a motion for judgment, and on August 3, 1983, Judge Sanders of the Circuit Court entered judgment in favor of Beverly Donlan against Robert Donlan in the amount of $5,000. On August 15, 1983, Robert Donlan filed a motion seeking to stay the Circuit Court's Contempt Order of July 19, 1983 pending an appeal which he planned to file in the Court of Special Appeals of Maryland. That same day, Robert Donlan filed a cash supersedeas bond in the amount of $11,000 with the Clerk of the Circuit Court. Mr. Donlan then did in fact file an appeal of the lower court's Contempt Order on August 18, 1983. However, on August 30, 1983, the Circuit Court denied Robert Donlan's motion to stay the Contempt Order pending appeal.

That same day, August 30, 1983, Beverly Donlan's attorney, Harvey Steinberg, filed with the Circuit Court a pleading entitled "Line." In the Line, it was asserted that Robert Donlan had failed to purge himself of the Circuit Court's Contempt Order, and counsel for Mrs. Donlan requested that the Clerk of the Circuit Court issue a Writ of Body Attachment against Mr. Donlan. On August 31, 1983, a Writ of Body Attachment was in fact issued against Robert Donlan. In his answer submitted under oath to interrogatories served on him in this case, defendant Smith, Clerk of the Circuit Court, has stated that one of the clerks in this office issued the writ and signed Smith's name to it. A true test copy of this writ was thereupon given to the Montgomery County Sheriff. The writ was not executed until October 3, 1983. On that date, Robert Donlan was arrested by Sergeant Frank Main and Corporal Jim Griffis of the Montgomery County Sheriff's Department, both of whom have been named as defendants in this suit.

Plaintiff was arrested by defendants Main and Griffis shortly after 10:30 a.m. on October 3, 1983, pursuant to the Writ of Body Attachment which had been issued by the Clerk of the Circuit Court. At the time, plaintiff was in the Montgomery County Courthouse. Plaintiff's briefcase was taken from him, he was handcuffed, and he was escorted by both Main and Griffis to the Sheriff's Office. At the Sheriff's Office, plaintiff was seated in front of a desk, and he was questioned by defendant Griffis so that an arrest record could be completed. Plaintiff was also photographed and fingerprinted. At some point during the booking process, defendant Main left the room, and the questioning and booking was completed by Griffis in a period of some 30 to 45 minutes. At approximately 10:40 a.m., Griffis had telephoned a Clerk in the Assignment Office of the County Courthouse so that the Court could be informed that plaintiff had been arrested and so that an appearance before a judge could be scheduled. During the questioning and booking process, plaintiff Donlan told defendant Griffis that he was an insulin-dependent diabetic, and that he

needed food. Plaintiff has further asserted that he also told Griffis that he felt weak and dizzy and that he wished to see a physician. Plaintiff contends that Griffis denied his request for food and also his request to see a physician.

After plaintiff had been booked, he was taken by Griffis to the cell block area within the Sheriff's Office. At that time, he was searched and placed in a cell. Defendant Griffis had no further contact with plaintiff after he was placed in the cell.

At about 2:30 p.m., which was some 3 hours after plaintiff had been booked, he was given a cheese sandwich in his cell. At some time during this period of detention, plaintiff was taken to defendant Main's office where, in Main's presence, plaintiff met with two persons from the Department of Justice where he is employed. These Department of Justice employees inspected materials which had been in plaintiff's briefcase when he was arrested. Although plaintiff now contends that he felt shaky and dizzy when he met with these persons in defendant Main's office, plaintiff did not inform Main or the Department of Justice employees of his condition at this time. Following this meeting, plaintiff was returned to the cell in the Sheriff's Office.

Plaintiff remained in the cell until approximately 2:30 p.m. when he was brought to a holding cell adjoining the courtroom of Judge L. Leonard Ruben. Following a wait of some 20 to 30 minutes in the holding cell, plaintiff was brought before Judge Ruben at approximately 3:00 p.m. A hearing was then held, and plaintiff was released after he paid $1,000 to purge himself of contempt. The appeal taken to the Court of Special Appeals was thereafter dismissed because plaintiff had purged himself of contempt by paying the $1000 in question.

## II

### The Claims

Plaintiff's federal claims against all five defendants are based on 42 U.S.C. § 1983.

In addition, plaintiff has asserted pendent state law claims against the defendants.

Plaintiff contends that defendant Smith (the Clerk of Court) deprived him of his liberty without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution. In addition, plaintiff has asserted pendent state tort claims for false arrest and false imprisonment against defendant Smith. Similar federal claims of unconstitutional deprivation of liberty have been asserted against defendants Beverly Donlan and her attorney Harvey Steinberg. Pendent state claims have been asserted against defendants Donlan and Steinberg for false arrest, false imprisonment, willful misrepresentation, innocent misrepresentation and malicious prosecution.

Insofar as defendants Main and Griffis are concerned, plaintiff asserts under § 1983 that in failing to abide by the mandate of the arrest warrant, they unconstitutionally deprived him of his liberty. Plaintiff also claims under § 1983 that these deputy sheriffs violated his constitutional rights by failing to provide him with medical treatment. Pendent state claims are asserted against defendants Main and Griffis for the alleged intentional failure on their part to provide plaintiff with medical care, as well as for their alleged negligent failure to provide such medical care.

## III

### The Applicable Legal Principles

■ The principles governing consideration of a motion for summary judgment are well known. A motion for summary judgment filed pursuant to Rule 56, F.R.Civ.P., should be granted "forthwith" if the pleadings, discovery and affidavits filed in the case show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Rule 56(c). One of the purposes of Rule 56 is to require a plaintiff, in advance of trial and after a motion for summary judgment has been filed and supported, to come forward with some minimal facts to show that a defendant may be liable under the claims alleged. See Rule

56(e). In the absence of such a minimal showing, a defendant should not be required to undergo the considerable expense of preparing for and participating in the trial of those issues addressed in a motion for summary judgment. If there is no genuine dispute as to any material fact, summary judgment should be granted to conserve judicial time and energy by avoiding an unnecessary trial and by providing a speedy and efficient summary disposition. *Bland v. Norfolk and Southern Railroad Company,* 406 F.2d 863, 866 (4th Cir.1969).

In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must demonstrate some "injury consequent upon violation of his constitutionally protected rights." *White v. Boyle,* 538 F.2d 1077, 1079 (4th Cir.1976). Each of the claims asserted by the plaintiff here against each defendant is based on his contention that such defendant, acting under color of state law, deprived him of liberty without due process of law.

In two recent decisions, the Supreme Court considered claims brought under § 1983 alleging the deprivation of the plaintiff's liberty interest. *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) and *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). In both of those decisions, the Supreme Court made it clear beyond question that negligent interference with a liberty interest does not amount to a constitutional deprivation within the meaning of the Due Process Clause of the Fourteenth Amendment. The Court had previously stated that the Fourteenth Amendment is simply not a font of tort law to be superimposed upon whatever systems may already be administered by the states. *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). The due process clause was intended to secure an individual from the arbitrary exercise of powers of government. *Daniels v. Williams, supra* 474 U.S. at —, 106 S.Ct. at 664. The doors of the federal courts should not be opened to civil rights law suits "where there has been no affirmative abuse of power." *Id.* at —, 106 S.Ct. at 664–65.

In *Davidson v. Cannon, supra,* the defendant was a prison official whose lack of due care led to serious injury of a prisoner. Nevertheless, the Supreme Court held that no § 1983 claim had been proved inasmuch as the defendant, far from abusing governmental power or employing it as an instrument of oppression, had done no more than mistakenly believe that the situation before him was not particularly serious. *Id.* 474 U.S. at —, 106 S.Ct. at 670.

When these principles are applied to the facts pertaining to each of the claims asserted by plaintiff here against each defendant, this Court concludes that summary judgment must be granted in favor of all defendants.

## IV

### *The Federal Claim Against Defendant Smith*

In support of his § 1983 claim against defendant Smith, plaintiff asserts that Smith issued the writ which resulted in his arrest and confinement without notice, without a hearing, and without a judicial determination of probable cause. Plaintiff contends that defendant Smith knew or should have known that plaintiff had appealed the Contempt Order and that Smith knew or should have known that plaintiff had filed a supersedeas bond with the Court. It is further argued by plaintiff that defendant Smith knew or should have known that the Contempt Order was a nullity on its face and that plaintiff could not possibly have complied with the provisions of the Order permitting him to purge himself of contempt.

The facts of record here do not establish that plaintiff sustained damage because of the arbitrary exercise by defendant Smith of the powers of government. No abuse of power or misuse of power by Smith can be shown.

On August 31, 1983, when the writ was issued which resulted in the jailing of plaintiff, there was outstanding an order of court finding plaintiff to be in contempt of court and ordering his confinement until he

purged himself of the contempt by paying $1,000. The Line filed by Beverly Donlan's attorney did no more than call the attention of the clerk to docket entries in the case. Plaintiff's motion to stay the Contempt Order pending appeal had been denied by the court on August 30, 1983. Filing of the supersedeas bond was not in compliance with the court's Order permitting plaintiff to purge himself of contempt. Only if and when plaintiff had, as ordered, paid the $1,000 to his wife or her attorney would he be free of contempt. At no time before he was jailed did plaintiff comply with the outstanding Order. Thus, it was appropriate for the Clerk to issue the writ which more than a month later resulted in the arrest and jailing of the plaintiff.

Plaintiff argues that the Order of Contempt was a nullity because it was entered on July 20, 1983 but required plaintiff to purge himself of contempt on or before July 8, 1983. There is no merit to this contention. If the Contempt Order was a nullity because of an error in the dates set forth therein, plaintiff should have moved in the Circuit Court to set it aside. Certainly the Court did not view it as a nullity. Plaintiff had moved on August 15, 1983 to stay the Contempt Order pending appeal. Had it been invalid or a nullity on its face, the Court would no doubt have stricken the Order or stayed it pending appeal. When the Court, on August 30, 1983 denied plaintiff's motion to stay, it should have been apparent to plaintiff, who was himself an attorney, that he had the option of either paying $1,000 to his former wife or facing confinement in the Montgomery County Detention Center.

██ Under these circumstances, this Court concludes as a matter of law that the acts of defendant Smith did not deprive plaintiff of liberty without due process of law. At most, plaintiff might be able to argue here that inferences from the facts might support the contention that defendant Smith, or some one acting under his direction, was negligent in issuing the writ. However, as the Supreme Court has recently emphasized, the due process clause is not implicated by a negligent act of an official causing unintended loss of liberty. *Daniels v. Williams, supra* and *Davidson v. Cannon, supra.*

██ In any event, as an alternative ground for its ruling here, this Court concludes as a matter of law that defendant Smith is entitled to qualified immunity from a suit for damages for any actions he took in issuing a Writ of Body Attachment against plaintiff. The writ was issued against plaintiff in accordance with procedures established in June of 1981 by Judge David C. Cahoon, Administrative Judge of the Sixth Circuit. Under these procedures, a clerk of the Circuit Court was to issue a body attachment upon an attorney's "Line" if a Contempt Order had been entered and if its purging date had passed. Plaintiff does not contend that these procedures were not followed, nor does he contend that he had purged himself of contempt, as indeed he had not. The procedures adopted by the Circuit Court did not require that a person found in contempt receive notice of a Line, nor did it require a hearing to determine whether such person had purged himself of contempt.

It is not for this Court to consider in this case the reasonableness of procedures duly adopted by judges of the Circuit Court for Montgomery County. As the Fourth Circuit cautioned in the recent case of *Reigh v. Schleigh*, 784 F.2d 1191, 1198 (4th Cir. 1986):

> ... [F]ederal courts should be loath both on grounds of comity and federalism to intrude upon the rule-making functions of state courts and, even in those rare instances when compelled to do so under their duty to uphold federal constitutional rights, should act cautiously and with moderation. And this principle has particular applicability where state judicial procedures are concerned.

Since defendant Smith followed duly established court procedures, he is clearly entitled to qualified immunity in a suit brought against him under § 1983, pursuant to standards established by the Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In order to prevent broad-ranging

discovery inherent in a judicial inquiry into an official's subjective motivation, the Supreme Court in *Harlow* concluded that such determinations should be made on the basis of the objective reasonableness of an official's actions in light of clearly established law. Government officials like defendant Smith "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow, supra,* at 818, 102 S.Ct. at 2738.

In this case, defendant Smith was following procedures established by the Circuit Court for the issuance of Writs of Body Attachment. Therefore, he did not violate any clearly established statutory or constitutional rights of which a reasonable person would have known. Accordingly, even if, in any event, a valid § 1983 claim could be asserted against defendant Smith, he would possess a qualified immunity which would bar any recovery of damages by plaintiff.

## V

### *The Federal Claim Against Defendant Beverly Donlan*

To succeed in a claim asserted against his former wife under § 1983, plaintiff must establish that she was a "state actor." Plaintiff relies on the Supreme Court case of *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) in contending that his wife may be sued in this Court under § 1983.

However, a private party's mere invocation of state legal procedures has not been held by the Supreme Court to constitute "joint participation" or "conspiracy" with state officials satisfying the § 1983 requirement of action under color of state law. *Lugar v. Edmondson Oil Co., Inc., supra* at 939 n. 21, 102 S.Ct. at 2755 n. 21. In this particular case, plaintiff is barred by principles of *res judicata* from suing his wife in this Court under § 1983. The Order which led to plaintiff's arrest was never set aside, and plaintiff is barred from now challenging it in this case. Plaintiff had every right to challenge in state court

the Contempt Order and his consequent jailing on grounds of § 1983 as well as on other grounds. Principles of *res judicata* now bar him from contending that the Order and the arrest were invalid.

■ For claim preclusion to apply in a case of this sort, three requirements must be met, as follows: (1) there must be a final judgment on the merits in the prior suit, (2) the claim must be substantially the same, and (3) the parties must be the same or in privity. *Mears v. Town of Oxford, Maryland,* 762 F.2d 368, 371–72 (4th Cir. 1985). If the same evidentiary facts would sustain both suits, then the second suit is barred if other criteria are met. *Kutzik v. Young,* 730 F.2d 149, 151–52 (4th Cir.1984). A second claim will be barred not only if it is a matter that was litigated in an earlier suit, but also if it could have been litigated in that earlier suit. *See Frontier Van Lines v. Maryland Bank & Trust Co.,* 274 Md. 621, 336 A.2d 778 (1975).

■ Here the parties are the same and the claim is substantially the same since plaintiff is here attacking the validity of the Contempt Order entered by the state court. The Order became final when plaintiff paid the $1,000 and dismissed his appeal. Principles of *res judicata* would not permit the plaintiff here to challenge under § 1983 his wife's actions in having the state court find him in contempt. The state had every right to consider and rule on plaintiff's § 1983 claim against his wife, as well as on any other contention he might wish to make in opposing the entry of the Contempt Order. *See Migra v. Warren City School District Board of Education,* 465 U.S. 75, 84–85, 104 S.Ct. 892, 897–98, 79 L.Ed.2d 56 (1984).

For these reasons, this Court concludes as a matter of law that defendant Beverly Donlan did not participate in any misuse of state power in seeking and obtaining the Contempt Order in question. There was no misuse of state power because plaintiff was arrested under a valid Order entered by the state court. Since plaintiff has not established any right to relief against his former wife under *Lugar* or under any

other theory, the motion for summary judgment of defendant Beverly Donlan must be granted.

## VI

### *The Federal Claim Against Defendant Steinberg*

In support of his § 1983 claim asserted against defendant Steinberg, plaintiff contends first that he never received notice of the Line that was filed by defendant Steinberg and which requested issuance of the attachment. Plaintiff notes that the Line was filed on the same day that the Circuit Court denied plaintiff's motion for a stay of the Contempt Order pending appeal. Secondly, plaintiff argues that Steinberg should have known that he had purged himself of contempt by filing the supersedeas bond.

■ Plaintiff under the facts here would not be entitled to seek relief under § 1983 from defendant Steinberg, a private attorney. The conduct of an attorney acting in his professional capacity while representing his client does not constitute action under color of state law for the purposes of § 1983. *Goetz v. Windsor Central School District,* 593 F.Supp. 526 (N.D.N.Y.1984); *see Hall v. Quillen,* 631 F.2d 1154, 1155–56 (4th Cir.1980). Defendant Steinberg was clearly acting on behalf of his client Beverly Donlan when the acts challenged here by plaintiff were undertaken.

In any event, defendant Steinberg had every right to request issuance of a Writ of Body Attachment when the Circuit Court denied plaintiff's motion for a stay of the Contempt Order. Circuit Court procedures did not require that defendant Steinberg serve a copy of the Line on plaintiff, nor was it necessary under state law that a further hearing be held before plaintiff was arrested. Plaintiff well knew that he had been sentenced to the Detention Center until he purged himself of contempt, and he also knew that his motion for a stay of the Contempt Order had been denied. More than a month in fact elapsed before plaintiff was finally arrested. Moreover, plaintiff did not purge himself of contempt

by merely filing a supersedeas bond. *See* Rule 1017 a and e, Maryland Rules of Procedure. Indeed, plaintiff later recognized that more had to be done to purge himself of contempt than merely to file a supersedeas bond. He later paid the $1,000 in full to defendant Steinberg and was thereby purged of contempt.

Finally, even if it were assumed that defendant Steinberg was a state actor for purposes of § 1983 and that he acted unreasonably in representing his client, plaintiff would still not be entitled to prevail under § 1983. Any failure of defendant Steinberg to serve a copy of the Line on plaintiff or any lack of knowledge that a supersedeas bond had been filed by plaintiff would merely amount, in any event, to a lack of due care on his part. As noted herein, the due process clause is not implicated by a negligent act of a state official or state actor causing unintended loss of liberty. *Daniels v. Williams, supra.*

## VII

### *The Federal Claims Against Defendants Main and Griffis*

■ As deputy sheriffs, defendants Main and Griffis are state officials who would be legally responsible under § 1983 for causing a loss of liberty by the misuse of or abuse of official power. Plaintiff first asserts that he is entitled to relief against these two defendants because they failed to comply with the terms of the writ and promptly bring plaintiff before a judge.

The facts here support no such contention. The Writ of Body Attachment was a valid one duly issued pursuant to an Order of the Circuit Court. Defendant Griffis telephoned the Circuit Court's Assignment Office ten minutes after plaintiff was arrested. Following his arrest, at approximately 10:30 a.m. on October 3, 1983, plaintiff was expeditiously booked and placed in a cell between 11:15 and 11:30 a.m. In *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), the Supreme Court ruled, *inter alia,* that an official executing an arrest warrant is not constitu-

tionally required to investigate independently every claim of innocence.

In support of his § 1983 claim against the two deputy sheriffs, plaintiff relies on a communication written to him on October 3 from Roberta Rhodes, his girlfriend. The Court would first note that this document has not been submitted under oath and therefore does not comply with the requirements of Rule 56. But even if this exhibit is considered as competent evidence pursuant to Rule 56, it does not show that defendants Main and Griffis violated plaintiff's due process rights. Ms. Rhodes indicated that plaintiff's file had been lost in the Assignment Office and that she had helped find it and arrange for a 3:00 p.m. hearing before Judge Ruben. There is nothing in the note to indicate that the deputy sheriffs did not act promptly in arranging for plaintiff's appearance before a judicial officer.

Accordingly, this Court concludes that there is no merit to plaintiff's argument that defendants Main and Griffis failed to comply with the mandate of the writ. This Court concludes as a matter of law that plaintiff did not suffer damage as a result of any unconstitutional acts of deputy sheriffs Main and Griffis in arresting and detaining plaintiff and in notifying the Court's Assignment Office of such arrest.

Finally, plaintiff claims that defendants Main and Griffis violated his Eighth Amendment rights in failing to provide him with medical treatment following his arrest. While he was being booked, plaintiff told defendant Griffis that he was an insulin-dependent diabetic, and plaintiff requested medical attention or something to eat. Plaintiff was not fed until some three hours after the booking process was completed, and he was not given medication during his detention. At approximately 2:30 p.m., plaintiff was given and consumed a cheese sandwich.

■ In *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court held that to prevail under a § 1983 claim for inadequate or improper medical care, a prisoner must allege and prove acts or omissions sufficiently harm-

ful to evidence deliberate indifference to serious medical needs. *Id.* at 104–05, 97 S.Ct. at 291. A claim based on medical malpractice or mere negligence may not be brought under § 1983. *Estelle v. Gamble, supra,* at 106, 97 S.Ct. at 292.

■ The record here does not establish that defendants Main and Griffis were deliberately indifferent to plaintiff's serious medical needs. Plaintiff has conceded that he never told defendant Main of his diabetic condition and never asked him for medical treatment. The delay on the part of defendant Griffis in seeing that defendant was fed was for a period of approximately three hours. During that time, plaintiff met with representatives of the Department of Justice. No evidence has been presented that he was suffering from diabetic shock or other serious medical condition during his period of confinement, at the time of his appearance before Judge Ruben, or after he was released. Although plaintiff had an appointment with his doctor the day following this incident, the appointment was cancelled, and plaintiff did not return to see his doctor until a month or so later.

During the period of his confinement, plaintiff was in contact with his girlfriend, Ms. Rhodes. There is nothing in her note to indicate that he had serious medical needs or that he was seriously ill. Indeed, at the conclusion of her note and after communicating with him, she observed "Isn't this exciting!?"

For all these reasons, this Court concludes that plaintiff is not entitled to prevail against defendants Main and Griffis under *Estelle v. Gamble, supra.* The record does not establish that the acts or omissions of the deputy sheriff amounted to defendants' deliberate indifference to plaintiff's serious medical needs. At most, plaintiff at trial would be able to establish that defendant Griffis was negligent in not immediately attending to his medical needs. But, as noted, proof of medical malpractice or simple negligence is not sufficient to establish a constitutional violation under § 1983. *Estelle v. Gamble, supra,* at 106, 97 S.Ct. at 292.

## VIII

*Plaintiff's Pendent State Law Claims*

Invoking this Court's pendent jurisdiction over his claims asserted under state law, plaintiff has also sought in this consolidated case recoveries against each of the defendants under various common law theories. For the reasons to be stated herein, defendants' motions for summary judgment will also be granted as to plaintiff's state law claims.

 Pendent jurisdiction is a doctrine of discretion and not one of plaintiff's right. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). However, the Supreme Court has expressly cautioned that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal law claims are dismissed before trial ... the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. at 1139.

Here, the federal claims have all been dismissed pursuant to defendants' motions for summary judgment. A majority of the courts which have considered the question have declined to exercise pendent jurisdiction over state claims when the federal claims have been disposed of prior to a full trial on the merits. *See Hector v. Weglein*, 558 F.Supp. 194, 204–205 (D.Md. 1982). Outlining the relevant factors to be considered in determining the appropriateness of a court's exercise of its discretion to decide pendent state claims, Judge Friendly in *Kavit v. A.L. Stamm & Co.*, 491 F.2d 1176, 1180 (2d Cir.1974) said the following:

> If it appears that the federal claims ... could be disposed of on a motion for summary judgment under F.R.Civ.P. 56, the court should refrain from exercising pendent jurisdiction absent exceptional circumstances.

Since summary judgment has been granted as to all of plaintiff's federal claims and since there are no exceptional circumstances here, this Court will not exercise pendent jurisdiction in this case. Accordingly, defendants' motions for summary judgment must likewise be granted as to all of plaintiff's claims asserted against all defendants under state law.

For the reasons stated, it is this 17th day of September, 1986, by the United States District Court for the District of Maryland,

ORDERED:

1. That the motion of defendants Main and Griffis for summary judgment be and the same is hereby granted;

2. That the motion of defendant Smith for summary judgment be and the same is hereby granted;

3. That the motion of defendant Steinberg for summary judgment be and the same is hereby granted;

4. That the motion of defendant Beverly Donlan for summary judgment be and the same is hereby granted; and

5. That judgment is hereby entered in favor of each of the defendants with costs.