Evelyn Edmondson **BLAND**, Appellant,

v.

**NORFOLK AND SOUTHERN RAIL-ROAD COMPANY**, Incorporated, Appellee.

No. 12592.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 29, 1968.

Decided Feb. 3, 1969.

Charles H. Manning, Daniel A. Manning, Manning & Manning, Williamston, N. C., L. H. Ross, and Carter & Ross, Washington, N. C., on brief) for appellant.

Edward N. Rodman, Washington, N. C., (Rodman & Rodman, Washington, N. C., on brief) for appellee.

Before SOBELOFF, BRYAN, and WINTER, Circuit Judges.

WINTER, Circuit Judge:

Plaintiff, the operator of an automobile in collision with a train at a railroad crossing in Washington County, North Carolina, sued the railroad for personal injuries and property damage. Suit was filed initially in a state court, but removed to a federal court because of diversity of citizenship and the amount in controversy. After removal, defendant, by interrogatories propounded to plaintiff, obtained plaintiff's version of how the collision occurred. Defendant's motion for summary judgment followed, and it was granted by the district court on the ground that plaintiff, under North Carolina law, was guilty of contributory negligence as a matter of law, thus barring her recovery. We affirm.

The operative facts, as stated by the district court,[1] were:

"On August 9, 1965 at about 11:15 A.M., the plaintiff was driving her 1964 Ford "Falcon" automobile along rural paved road no. 1301 about three (3) miles west of Roper, Washington County, North Carolina. The plaintiff was driving her car in a southerly direction when she approached the defendant's railroad tracks lying east to west across the road. The plaintiff collided at the intersection of the road and the tracks with a train owned by the defendant and operated by its employee who was acting within the course and scope of his employment. * * *

"At the scene of the accident, rural paved road no. 1301 is straight for a considerable distance and runs north to south. It is of asphalt construction. At the time of the accident the crossing was protected by a standard railroad cross-buck sign on the right of way of the defendant, on both sides of the track; and, a standard railroad sign of the North Carolina Highway Commission located on its right of way approximately three hundred and seventy-five (375) feet northwardly from the nearest rail. In addition, there was a railroad sign painted in the southbound lane of the road approximately three hundred and fifty (350) feet from the nearest rail.

"It had been raining on the day in question but it was clear and the road was dry when the accident occurred. Visibility was not limited by weather conditions.

"The plaintiff was riding alone. She was familiar with rural paved road no. 1301 having traveled it once or twice a week for eight (8) months prior to the date of the accident.

"When the plaintiff first saw or became aware of the train she was traveling thirty to thirty-five (30 to 35) miles per hour. Upon sighting the train, she immediately applied her brakes.

"At the time that the plaintiff applied her brakes, she was a minimum of seventy-seven (77) feet from the nearest rail. The train was about as far from the grade crossing at the time the plaintiff first observed it as she was from the grade crossing."

Defendant's motion for summary judgment assumed, for purposes of the motion, that defendant was negligent and its negligence was a proximate cause of plaintiff's injuries and damages; but the motion asserted that plaintiff was also

1. In most part, the facts stated by the district court were a recitation by letter and verse of plaintiff's sworn answers to defendant's interrogatories which were designed to elicit a full disclosure of plaintiff's version of the accident. In quoting the district court's statement we have eliminated cross references to the answers.

negligent and her negligence was also a proximate cause of the accident. Based upon plaintiff's admission that, being familiar with the crossing, she saw the train when she and it were at least 77 feet from the nearest rail, that she failed to stop, or that she did not have her vehicle under sufficient control to enable her to stop, and that no reason was suggested why plaintiff could not stop, the district court concluded, principally upon Carter v. Atlantic Coast Line Railroad Company, 256 N.C. 545, 124 S.E.2d 561 (1962), that plaintiff was guilty of contributory negligence as a matter of law.

We think that the *Carter* case and Price v. Seaboard Air Line Railroad Co., 274 N.C. 32, 161 S.E.2d 590 (1968), decided after the district court's decision in the instant case, command that result. In *Carter*, plaintiff was familiar with the crossing. As he approached, he slowed down and looked both ways. Because of weeds and bushes he could not see the train until he was 30 feet from the track. When he saw the train he immediately applied his brakes but he skidded from the presence of sand on the street and slid into the train. These facts, so the Court held, provided a basis for compulsory non-suit because of plaintiff's contributory negligence.[2]

In *Price,* the operator of the vehicle—Mrs. Price [3]—was familiar with the crossing. She approached it at a speed of 30–35 miles per hour. She looked to her right and saw nothing. Her view to her left was partially obscured by weeds and a bank but she did observe a train 300 feet away. She immediately applied her brakes but was unable to stop her automobile before it went on the tracks where it stalled and was hit by the train. She, too, was held guilty of contributory negligence as a matter of law.[4]

---

2. The essence of the decision appears from the following portion of the court's opinion:

> "While the plaintiff's evidence leaves the question of defendant's negligence in the twilight, we think his contributory negligence appears in full daylight. He lived in the vicinity and was familiar with the crossing and its surroundings. approach, suddenly applied his brakes, and skidded on to the track in front of the train. He failed to use his faculties Yet, with his full knowledge, he failed to stop, but proceeded toward the crossing until he became aware of the train's but trusted to luck which, as sometimes happens, turned out to be bad. According to his admission, he saw the train, or, as he said, he became aware of its approach when it was 30 feet from the crossing. But his speed and his failure to stop had placed him in the danger zone from which he could not extricate himself. 'It does not suffice to say that the traveler * * * stopped, looked and listened; the looking and listening must· be timely, so that the precaution may be effective.' Johnson v. Southern R. R. Co., 255 N.C. 386, 121 S.E.2d 580 [90 A.L.R.2d 344]." 124 S.E.2d at 563.

3. *Price* concerned claims by the driver, her husband who was her principal, and several minors, who were passengers. The claim of Mrs. Price and her husband were held barred by her contributory negligence but the claims of the passengers, in their own right, were not barred.

4. On this issue, the Court said:

> "Mrs. Bertha C. Price was thoroughly familiar with this crossing and that a grade crossing over the railroad tracks was there. In not decreasing her speed from 30 to 35 miles per hour as she approached the railroad tracks with her view partially obscured, and when traveling at such a rate of speed that when she saw the train, above the bank and weeds, 300 feet away down the tracks, she could not stop, she failed to exercise ordinary care for her own safety. Under the circumstances, she took a chance when she entered a known zone of danger thinking that she could pass over in safety, and lost. Considering her evidence in the light most favorable to her, it affirmatively shows contributory negligence on her part so clearly that no other conclusion can be reasonably drawn therefrom. It must not appear that Mrs. Price's negligence was the sole proximate cause of her injuries, as this would exclude any idea of negligence on the part of the defendant. * * * It is enough if it is contributory to the injury. * * * Our opinion is that Mrs. Price was guilty of contributory negligence and her action against the railroad should have been nonsuited." 161 S.E.2d, at 597.

To avoid the ineluctable conclusion to which *Carter* and *Price* point, plaintiff stresses that both were decided after trial, or at least that nonsuit was not granted until each of those plaintiffs had been given the opportunity to present his full case at trial. Plaintiff reasons that she should have been given a similar opportunity and that to grant defendant's motion for summary judgment unjustly deprived her of her day in court.

■ Plaintiff misconstrues the function and scope of the summary judgment rule. Rule 56, Fed.R.Civ.Pro. Summary judgment is to avoid a useless trial. It is a device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts. 6 Moore's Federal Practice, ¶56.15[1]; 3 Barron and Holtzoff, Federal Practice and Procedure (Wright's Ed. 1958) § 1231.

■ Summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), supra. In regard to the pleadings, however, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), supra. While a day in court may be a constitutional necessity when there are disputed questions of fact, the function of a motion for summary judgment is to smoke out if there is any case, i. e., any genuine dispute as to any material fact, and, if there is no case, to conserve judicial time

and energy by avoiding an unnecessary trial and by providing a speedy and efficient summary disposition.

■ Summary judgment is available in a variety of proceedings, both legal and equitable. It is true that because of the peculiarly elusive nature of the concept of negligence, it is the rare personal injury case which may be properly disposed of by summary judgment. Gauck v. Meleski, 346 F.2d 433, 437 (5 Cir. 1965). See also, St. John v. New Amsterdam Cas. Co., 357 F.2d 327 (5 Cir. 1966); Williams v. Chick, 373 F.2d 330 (8 Cir. 1967). But this is not to say that where, as here, that unusual case is encountered, a plaintiff must have his day in court even though there is nothing to be tried. "[T]he mistake should not be made of supposing that because summary judgment cannot normally be granted in a particular kind of case, the motion should not be granted in an unusual case of the kind in question where such procedure is in fact appropriate." 3 Barron and Holtzoff, supra, § 1232, p. 105. "The utilization of the summary judgment procedure in a negligence action on the basis of an affirmative defense involves the same problems as in any other type of action." 6 Moore's, supra, ¶ 56.17 [42], p. 2583.[5]

■ From the plaintiff's own version of the incident, she, not only knowing of the crossing, in fact saw the train under circumstances where the law of North Carolina imposed on her an absolute duty to stop and yield the right of way. This she did not do; nor does she suggest any reason why she failed to perform the duty imposed on her. She filed an affidavit in opposition to the motion. It does no more than assert that defendant was negligent, a conclusion admitted by de-

5. The reported cases provided several examples in which summary judgment was deemed proper in negligence actions. In Richardson v. Kubota, 337 F.2d 842 (4 Cir. 1964), we sustained summary judgment for defendant upon the theory that the undisputed facts failed to show primary negligence. Summary judgment because of contributory negligence in a cross-

ing accident was granted in Bass v. Southern Pacific Company, 196 F.Supp. 763 (D.Ore.1961). See also, Petro v. Kellas, 146 W.Va. 619, 122 S.E.2d 177 (1961), where, under a state summary judgment rule modeled on the federal rule, summary judgment for defendant because of contributory negligence and assumption of the risk was held to lie.

fendant, for the purpose of its motion.[6] Both in her brief and in oral argument, plaintiff asserts that she has other testimony and other witnesses to show the existence of a dispute as to material facts. Despite our invitation, however, she has failed to show any dispute concerning the facts which, under *Carter* and *Price*, constitute her contributorily negligent. Rule 56 requires this demonstration in order to avoid summary disposition. Absent such a demonstration, summary judgment for defendant was authorized.

Affirmed.

6. Plaintiff's affidavit was that of her counsel, who made it on the basis of his "personal investigation." The admissibility or usability of the affidavit is questionable because Rule 56(e), supra requires that affidavit be made on personal knowledge, set forth *facts* as would be admissible in evidence and show that the affiant is competent to testify thereto. We do not reach this question, however, because, accepting the affidavit at face value, we do not read it to demonstrate the existence of any dispute as to plaintiff's acts or omissions making her contributorily negligent.