**Judith M. KOENICK, Plaintiff,**

v.

**Reginald M. FELTON, et al., Defendants.**

**Civil Action No. AW–96–3111.**

United States District Court,
D. Maryland.

July 2, 1997.

Eugene R. Fidell, Washington, DC, Dwight H. Sullivan, Baltimore, MD, for plaintiff.

Roger W. Titus, Patrick L. Clancy, Kevin B. Collins, Joel William Ruderman, Rockville, MD, for defendants.

Mohammed T. Mehdi, Ph.D., Secretary General of the Nat. Council on Islamic Affairs, New York City, pro se movant.

Robert D. Wing, Bradley S. Albert, Washington, DC, for amicus curiae American Jewish Congress.

Robert J. Kim, Arthur Robbins, Greenbelt, MD, for amicus curiae Nat. Council on Islamic Affairs.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

Before the Court are Cross–Motions for Summary Judgment filed by Plaintiff and Defendants. A hearing on these Motions was held on June 30, 1997. The Court has considered the arguments presented in the written submissions and at the hearing, and

has studied the relevant case law. Accordingly, the Court has determined that summary judgment for the Defendants is appropriate.

### Background

This case surrounds the constitutionality of a Maryland statute providing for a public school holiday from "[t]he Friday before Easter and from then through the Monday after Easter," Md. Educ. Code Ann. § 7-103(c)(1)(iii) (hereafter " § 7-103"). Plaintiff is a teacher employed by the Board of Education of Montgomery County, and she is Jewish. Plaintiff asserts that when she "has observed certain days of Passover—an important Jewish holiday—as religious holidays, she has been required to use personal leave days or leave without pay" from her employment.[1] Revised Second Amended Complaint at 4.

In Count I of the Revised Second Amended Complaint, Plaintiff alleges that § 7-103 violates the Establishment Clause of the First Amendment of the U.S. Constitution, as applied to the states by the Fourteenth Amendment. In Count II, she alleges that the statute violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

### Summary Judgment Principles

Summary judgment is appropriate when there is no genuine dispute of material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (citations omitted). *See also Bland v. Norfolk and Southern Railroad Co.*, 406 F.2d 863, 866 (4th Cir.1969).

In determining whether genuine and material factual disputes exist, resolution of which requires trial, the Court has reviewed the parties' memoranda and the many exhibits attached thereto. In considering each of the respective Motions for Summary Judgment, the Court has construed all facts, and all reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Applying these principles to this case, the Court concludes that summary judgment for the Defendants must be granted.

### Discussion

### I. Establishment Clause

Count I of Plaintiff's Complaint alleges that § 7-103 violates the Establishment Clause of the First Amendment of the U.S. Constitution, as applied to the states by the Fourteenth Amendment. The Establishment Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion . . .," and this provision binds the states through the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940).

### A. The Question of Applicable Standard

Plaintiff's interpretation of Establishment Clause jurisprudence is that if a statute facially prefers one religion over others, it should be subject to strict scrutiny. Otherwise, Plaintiff argues, the statute should be subject to the three-part test set forth in *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). In espousing this interpretation of the case law, Plaintiff relies heavily on *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 695, 109 S.Ct. 2136, 2146, 104 L.Ed.2d 766 (1989). In *Hernandez,* the U.S. Supreme Court rejected an Establishment Clause challenge to an IRS determination regarding the charitable con-

---

1. As discussed later in this Memorandum Opinion, the school calendar for Montgomery County provides for school closings on the Jewish holidays of Yom Kippur and Rosh Hashanah, but does not provide for school closing during Passover.

tribution status of payments made to the Church of Scientology in return for religious services. In framing its analysis, the Court provided the following guidance:

> when it is claimed that a denominational preference exists, the initial inquiry is whether the law facially differentiates among religions. If no such facial preference exists, we proceed to apply the customary three-pronged Establishment Clause inquiry derived from *Lemon v. Kurtzman.*

*Hernandez,* 490 U.S. at 695, 109 S.Ct. at 2146.

However, it is not clear that this *Hernandez* approach should precede and potentially preempt the analysis of Establishment Clause challenges through the prism of the *Lemon* test. In response to the somewhat unclear dictates of Establishment Clause jurisprudence, the Fourth Circuit recently stated that "until the Supreme Court overrules *Lemon* and provides an alternative analytical framework, this Court must rely on *Lemon* in evaluating the constitutionality of legislation under the Establishment Clause." *Barghout v. Bureau of Kosher Meat & Food Control,* 66 F.3d 1337, 1342 n. 11 (4th Cir. 1995). Moreover, as Defendant has argued and as neither Plaintiff nor the Court's own research has refuted, no case has ever applied this strict scrutiny test in the context of an Establishment Clause challenge to government recognition of holidays that were once or now are religiously based. Hence, analysis of this case through the *Hernandez* lens appears inappropriate.

Furthermore, even if this Court were to apply *Hernandez,* the Court would conclude that this case does not qualify for strict scrutiny under the *Hernandez* analysis. Consequently, the *Lemon* test will govern in this case regardless of the applicability of *Hernandez.* In reaching this conclusion, the Court has considered Plaintiff's argument that the statute constitutes a facial preference because "Section 7–103 aids only one religion." Plaintiff's Opposition and Cross–Motion for Summary Judgment at 10. The Court has also weighed Plaintiff's claim that the statute creates an unconstitutional denominational preference between Christiani-

ty and other religions, as well as between Eastern and Western Christianity (which do not identify the date of Easter in the same manner).

However, the Court has concluded that these arguments must fall because they are premised on an incorrect conception of Easter. As the Defendants note, Easter itself is a highly secularized holiday. With reference to the similarly secularized holiday of Christmas, the U.S. Supreme Court has noted that "[t]he Christmas holiday in our national culture contains both secular and sectarian elements." *Lynch v. Donnelly,* 465 U.S. 668, 709 n. 15, 104 S.Ct. 1355, 1378 n. 15, 79 L.Ed.2d 604 (1984). The statutory vacation provided by § 7–103 surrounds Easter. Not only does § 7–103 fail to mention "Good Friday," but it also provides a vacation day on the Monday after Easter, a day with no religious significance. Consequently, the Court believes that § 7–103 would fall short of receiving strict scrutiny review under the *Hernandez* standard even if that standard were applicable. The proper frame of analysis for this Establishment Clause challenge is the three-part test set forth by the U.S. Supreme Court in *Lemon v. Kurtzman.*

**B. The Three–Part *Lemon* Test**

In *Lemon v. Kurtzman,* the Supreme Court set forth a three-part test for determining whether a state action violates the Establishment Clause. As explained in *Lemon,* in order for a state action to be in compliance with the Establishment Clause, it must:

> (1) have a secular purpose
>
> (2) have the principle or primary effect of neither advancing nor inhibiting religion; and
>
> (3) not foster an excessive entanglement with religion.

*Lemon,* 403 U.S. at 612–613, 91 S.Ct. at 2111. *See also North Carolina Civil Liberties Union Legal Foundation v. Constangy,* 947 F.2d 1145, 1147 (4th Cir.1991), *cert. denied,* 505 U.S. 1219, 112 S.Ct. 3027, 120 L.Ed.2d 898 (1992) (If a state action violates even one of the three prongs of the *Lemon* test, that state action is unconstitutional.)

In reviewing the record in this case, the Court has concluded that the first prong of the *Lemon* test is satisfied. As Defendants have argued, the high number of students and teachers who would be absent on the Friday and Monday surrounding Easter would disrupt the effectiveness of instruction and would require monetary outlay for the hiring substitute teachers. Defendant has explained that it is for this same reason that the Jewish holidays of Yom Kippur and Rosh Hashanah are excluded from the school calendar if they fall on weekdays. *See* Memorandum in Support of Defendants' Motion for Summary Judgment at 5, n. 8 and Exhibits 7 and 8.

Plaintiff and the Amicus argue that although there is evidence supporting the decision to close school for the aforementioned reason on these Jewish holidays, there is no comparable evidence to support the closing for the days specified in § 7–103. This argument is specious, because schools have been closed on the days specified in § 7–103 since the establishment of organized public schools in Maryland more than 130 years ago, and thus it has not been possible to collect such data. The Court is sufficiently persuaded that these closings are supported by the same pragmatic secular purposes as the closings for Jewish holidays, because the Christian population in Maryland is almost ten times the state's Jewish population.[2]

■ Although closing school on such days may also have the effect of accommodating religion, the U.S. Supreme Court has stated repeatedly that a statute is not automatically a violation of the Establishment Clause merely because it has the effect of accommodating religion. The Supreme Court has advised that Courts must be reluctant "to attribute unconstitutional motives to the states, particularly when a plausible secular purpose ... may be discerned from the face of the statute." *Mueller v. Allen,* 463 U.S. 388, 394–95, 103 S.Ct. 3062, 3067, 77 L.Ed.2d 721 (1983). *See also Hobbie v. Unemployment Appeals Comm'n,* 480 U.S. 136, 144–145, 107 S.Ct. 1046, 1051, 94 L.Ed.2d 190 (1987).

Furthermore, as noted above, Easter has become a secularized holiday in our society, such that recognition of it is consistent with a secular purpose. Although Plaintiff argues that the purpose of the statute is to recognize "Good Friday" as a holiday (rather than simply Easter), this argument does not jibe with the statute's inclusion of the Monday after Easter as well, because that Monday holds no religious significance.

Having established that § 7–103 satisfies the first prong of the *Lemon* test, the Court proceeds to the second prong of the test: whether the statute has the primary effect of advancing or inhibiting religion. The Court has concluded that this prong of the *Lemon* test is also satisfied. By giving students and teachers a long weekend surrounding Easter, the statute does not require or even encourage people to attend religious services for Good Friday. The statute makes possible the attendance of such services, but state law also excuses students' and teachers' absences for the holidays of their religions. *See* Memorandum in Support of Defendants' Motion for Summary Judgment at 17 and Exhibits 6 and 16.

Plaintiff cites case law from outside of the Fourth Circuit suggesting that a school holiday on Good Friday violates this second prong of the *Lemon* test. However, the Court must heed the dictates of the Fourth Circuit, which has stated that "[e]very government practice must be judged in its unique circumstances to determine whether it [endorses] religion." *Barghout,* 66 F.3d at 1345 (quoting *Lynch,* 465 U.S. at 694, 104 S.Ct. at 1370 (O'Connor concurring)). As explained above, the Court has concluded that this specific statute does not constitute an endorsement or advancement of religion. Rather, the effect of the statute appears to be the pragmatic secular purposes outlined above. The various cases from courts in other Circuits that Plaintiff cites bear no relevance to this determination.

Indeed, this case can be analogized to the U.S. Supreme Court's analysis of Maryland's

---

**2.** As Defendants point out in their Reply Memorandum, "while 4.3% of Marylanders are Jewish, nearly 44% of Marylanders are Christians." *See* Defendants' Reply Memorandum at 11 and Exhibits 18 and 19.

Sunday closing laws, in *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). In *McGowan*, the Supreme Court determined that Maryland's Sunday closing laws did not violate the Establishment Clause, regardless of whether they originated in religiosity, because those laws have the overriding purpose of giving citizens a uniform day of rest. Similarly, the long weekend surrounding the largely secularized holiday of Easter not only serves the ends of pragmatism and efficiency in school administration, but also provides an anchor for the yearly spring break enjoyed by students and faculty. Hence, the secular effects of the statute at issue in this case clearly predominate.

Finally, the third prong of the *Lemon* tests requires the Court to examine whether this statute causes excessive state entanglement with religion. The statute at issue in this case fosters little if any governmental entanglement with religion. The statute requires no participation in church-related activities and provides no funding for churches.

Supreme Court jurisprudence holds that "[e]ntanglement is a question of kind and degree." *Lynch*, 465 U.S. at 684, 104 S.Ct. at 1365. In *Lynch*, the Supreme Court held that there was no excessive entanglement as a result of the City of Pawtuckett's including a creche in the city's annual Christmas display. The Court based this conclusion on the absence of evidence of church involvement with the content or design or the creche, the absence of government expenditures for maintenance of the creche, and the fact that there was little or no interaction between the church and the city officials managing the creche.[3] The reasoning of the *Lynch* Court is at least equally applicable to the immediate case. One might argue that the government is interacting with religion in consulting the calendar for the date of Easter, but this alone does not constitute sufficient governmental interaction with religion to qualify as "excessive entanglement." For these reasons, § 7–103 falls far afield of constituting

excessive government entanglement with religion.

Hence, § 7–103 passes the *Lemon* test.

### C. Alternate Establishment Clause Tests

■ In addressing the constitutionality of § 7–103, this Court will also address alternate Establishment Clause analyses that have been proposed by individual Supreme Court justices in recent years. In her concurrences in *County of Allegheny v. ACLU*, 492 U.S. 573, 623, 109 S.Ct. 3086, 3117, 106 L.Ed.2d 472 (1989) and *Lynch v. Donnelly*, 465 U.S. 668, 688, 104 S.Ct. 1355, 1367, 79 L.Ed.2d 604 (1984), Justice O'Connor proposes a two-part "endorsement" test. The first prong of this test queries whether a state has "excessive entanglement" with religious institutions in a way that might interfere with the religious institutions' independence. *Lynch* at 687–88, 104 S.Ct. at 1366–67. The second prong of the test bars a state from "endorsing" or "disapproving" a religion. *Id.* at 688, 104 S.Ct. at 1367.

Although this test has not been broadly endorsed by the Supreme Court, it may prove helpful for this Court to apply its analysis to the present case. As discussed above with reference to the *Lemon* test, § 7–103 does not foster excessive governmental entanglement with religion, as addressed in the first prong of O'Connor's test. The second prong of the test forbids governmental endorsement or disapproval of religion. The Maryland statute at issue in this case also passes this prong of O'Connor's test. The statute does not grant any added benefit to members of one religion that it does not grant to everyone, as the four-day holiday surrounding Easter is conferred upon students and teachers irrespective of their religions. Likewise, students and teachers who do not recognize "Good Friday" suffer no negative consequences as a result. For these reasons, the long weekend surrounding the largely secularized holiday of Easter is

---

**3.** Indeed, the Supreme Court has only found excessive government entanglement in cases involving a substantial degree of interaction between church and state. In *Lemon v. Kurtzman*, for example, the Court found unconstitutional state statutes providing aid to church-related elementary and secondary schools and their teachers. The Court based this ruling on the fact that this required continuing and excessive oversight between the state and the church-related schools.

**528**

neither an endorsement or a disapproval of a particular religion.

In *Lee v. Weisman,* 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992), the Supreme Court majority applied yet another Establishment Clause test, this one propounded by Justice Kennedy. Under this test, a state action violates the Establishment Clause if the state action coerces someone to support or participate in religion. *Id.* at 587, 112 S.Ct. at 2655. Applying this test in *Lee v. Weisman* (the only case in which it has been applied by the Court's majority), the Court held that it was a violation of the Establishment Clause to include prayer in a graduation ceremony over a student's objections, as this required the student to conform to a state-sponsored religious activity in order to attend her graduation. *Id.* at 596, 112 S.Ct. at 2660. The Court held that this constituted the state's coercing the student to support a particular religion. *Id.*

The present case passes the coercion test. By providing a long weekend surrounding Easter, the County does nothing coercing students or teachers to attend religious services or to support any particular religion. Individuals may choose to attend such services as they wish, but nothing in § 7–103 coerces or even encourages them to do so.

The final alternative to the *Lemon* test has been espoused by the Supreme Court in two recent Establishment Clause decisions. *In Board of Educ. of Kiryas Joel v. Grumet,* 512 U.S. 687, 114 S.Ct. 2481, 129 L.Ed.2d 546 (1994) and *Rosenberger v. Rector and Visitors of the Univ. of Virginia,* 515 U.S. 819, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995), the Court did not rely on enumerated application of the *Lemon* test, but rather, it insisted that the state must remain neutral towards religion. In essence, this neutrality test prevents the state from favoring one religion over another or favoring religious adherents over nonadherents.

In the present case, this neutrality test is satisfied. As discussed above, Easter has become a secularized holiday, and § 7–103 simply provides a four day weekend surrounding Easter. Indeed, one of the vacation days provided by § 7–103, the Monday after Easter, has no religious significance.

Furthermore, the statute at issue serves the pragmatic purpose of scheduling vacation days to coincide with days when there is a high probability of absenteeism. As noted previously, this principle is also applied to days that would likely have high absenteeism because they are the days of particular Jewish holidays. Thus, the statute does not favor one religion over another.

Likewise, the statute does not favor adherents over non-adherents, because it applies equally to everyone. The four-day weekend surrounding Easter is provided to all students and teachers, regardless of their religious beliefs or lack thereof. In these ways, § 7–103 easily satisfies the neutrality requirement espoused in recent Supreme Court jurisprudence.

Based on the foregoing analyses, the Court concludes that § 7–103 is not in violation of the Establishment Clause.

### D. Case Law from other Circuits

Although the Fourth Circuit has not considered this issue, the Ninth and Seventh Circuits have considered matters with some similarity to the immediate case. Although these opinions are not binding on this Court, a review of them further elucidates the present case, and confirms the Court's conclusion that § 7–103 does not violate the Establishment Clause.

In 1991, the Ninth Circuit found constitutional a Hawaii statute declaring "Good Friday" a state holiday. *Cammack v. Waihee,* 932 F.2d 765 (9th Cir.1991). Applying the *Lemon* test, the Court found that the first prong of the test did not require that the purpose be entirely secular. The Court explained that the prong is satisfied if a sincere secular purpose exists. The Court also noted the Supreme Court's recognition that mere accommodation of religion does not necessarily violate the Establishment Clause. *Cammack,* 932 F.2d at 776, citing *Hobbie,* 480 U.S. at 144–45, 107 S.Ct. at 1051.

Addressing the second prong of the *Lemon* test, the Ninth Circuit relied heavily on *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), in which the Supreme Court held that Maryland's Sunday

closing laws did not violate the Establishment Clause because they have grown to have the neutral primary effect of giving citizens a uniform day of rest. The Ninth Circuit held that Good Friday had grown to hold a similar position for the citizenry. The Court addressed the third prong of the *Lemon* test relatively briefly, holding that the only potential entanglement was the state's use of the church's calendar, and that this did not constitute "excessive" entanglement under the jurisprudential norms.

Md. Educ. Code Ann. § 7–103 passes the *Lemon* test even more easily than did the provision before the Ninth Circuit. Because the statute before the Ninth Circuit specifically provided that "Good Friday" was a holiday (and did not provide any other, non-religious day surrounding the secularized Easter weekend as a holiday), it arguably appears to reflect religious purpose in a way that § 7–103 does not. For similar reasons, the Maryland statute even more clearly satisfies the second prong of the *Lemon* test. Because it does not specify "Good Friday," but rather provides two days of vacation surrounding Easter weekend (only one of which might be construed as having any religious significance), the Maryland statute has an even more readily apparent neutral primary effect. Finally, both statutes fall far short of fostering excessive government entanglement with religion, as discussed above.

Plaintiff urges the Court to note that this Ninth Circuit case was not a school-related case, but rather, addressed a more general closing statute. The Court does not believe that this distinction bears significant relevance to the similar logical analyses required to determine the statutes' constitutionality. As noted above, although this Ninth Circuit case does not serve as binding precedent for this Court, its analysis nonetheless supports this Court's independent conclusions.

Plaintiff further urges the Court to consult *Metzl v. Leininger*, 57 F.3d 618 (7th Cir. 1995), which the Court has done. In *Metzl*, the Seventh Circuit found unconstitutional an Illinois statute that specifically named Good Friday as a school holiday. Although this Seventh Circuit case does not serve as precedent for this Court, this Court nonetheless finds that the statute at issue in *Metzl* is clearly distinguishable from § 7–103.

The Seventh Circuit recognized that Easter has become an increasingly secularized holiday. *Metzl*, 57 F.3d at 620. The Court specified that unlike Easter, Good Friday has not become a secular holiday. The Maryland statute differs from the Illinois statute in that the Maryland statute does not specify "Good Friday" or provide it as a lone holiday in its own right. Rather, the Maryland statute provides two days of vacation surrounding the secularized Easter weekend.

Moreover, the Governor of Illinois referred to the Illinois statute one year after its enactment by proclaiming that Good Friday "is a day charged with special meaning to multitudes throughout the Christian world." *Metzl*, 57 F.3d at 619. This further demonstrated to the Seventh Circuit the religious purpose of the statute. No similar state proclamation exists with reference to the Maryland statute.

Finally and most significantly, the Seventh Circuit specifically stated that it would be handling a different situation if Illinois closed schools on the Friday before Easter for a purpose related to providing a spring break rather than for a religious purpose. The Court held that if the intention of the Illinois statute had been "that the public schools shall be closed on the Friday before Easter in order to give students and teachers a three-day spring weekend, rather than to *commemorate the crucifixion of Jesus Christ*, we might have a different case." *Metzl*, 57 F.3d at 623. The Maryland statute's closing of school on the Friday before and Monday after Easter clearly serves such a spring-break purpose. Indeed, the Friday before Easter is only one of two days provided by the statute to extend the secularized Easter weekend.

As discussed above, this Court finds that § 7–103 does not violate the Establishment Clause of the First Amendment, as applied to the states through the Fourteenth Amendment. The Court will now turn to Count II of Plaintiff's Complaint.

## II. Equal Protection Clause

██ In Count II of her Complaint, Plaintiff alleges that § 7–103 "violate[s] the Equal Protection Clause of the Fourteenth Amendment by providing public school holidays for the celebration of the religious holidays of selected faiths while failing to provide public school holidays for the celebration of religious holidays of any other faith." Revised Second Amended Complaint at 5. The great bulk of the parties' Memoranda are devoted to discussing Count I of the Complaint, and they grant Count II relatively little attention. In its own analysis, the Court has determined that Count II cannot survive summary judgment.

As explained above, Easter has become a highly secularized holiday. Md. Educ. Code § 7–103 provides all students and teachers with a long weekend surrounding that holiday. As such, the statute treats individuals of all religious convictions the same, granting them all a four-day break around a holiday that has become secularized in nature.

This equality of treatment is not changed by the ancillary fact that some Christians may also recognize the Friday before Easter as a religious holiday. To argue to the contrary is analogous to arguing that it is a violation of Equal Protection for school to be closed on Saturdays because although such closing recognizes a secular tradition, Saturday also happens to be the Sabbath for individuals of the Jewish faith.[4] The Court believes that neither situation prompts Equal Protection analysis because neither involves the fundamental prerequisite to invocation of the Equal Protection Clause: unequal treatment of similarly situated persons. *See* Lawrence Tribe, *American Constitutional Law* 1438 (1988).

Consequently, it would be inappropriate for the Court to pursue any further an Equal Protection analysis of § 7–103 (addressing such issues as whether a fundamental right is involved as Plaintiff urges, or whether mere rationality review would apply instead). Rather, the Court concludes that because § 7–103 treats all affected individuals equally by providing them with an extended weekend surrounding a highly secularized holiday, there is no possible violation of the Equal Protection Clause. Accordingly, Count II of Plaintiff's Complaint cannot survive summary judgment.

### Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment will be granted, and Plaintiff's Motion for Summary Judgment will be denied. A separate Order consistent with this Memorandum Opinion will issue.

### ORDER

In accordance with the Memorandum Opinion, it is this 2nd day of July, 1997, ORDERED:

1. That Defendants' Motion for Summary Judgment BE, and the same hereby IS, GRANTED;

2. That Plaintiff's Cross–Motion for Summary Judgment BE, and the same hereby IS, DENIED;

3. That the Clerk of the Court CLOSE this case; and

4. That the Clerk of the Court mail copies of this Order and the Memorandum Opinion to all parties of record.

---

4. *See also McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).