Randy **SOULEYRETTE**, Plaintiff,

v.

Ronnie Lee **CONAWAY**, Defendants.

No. Civ. 97–0271–B.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

June 12, 1998.

Daniel Robert Bieger, Copeland, Molinary & Bieger, P.C., Abingdon, VA, Buddy Harold Wallen, Clintwood, VA, for Plaintiff.

Robert V. Ward, Ward, Bishop & Rasnic, Bristol, VA, for Defendant.

## OPINION AND ORDER

JONES, District Judge.

In this tort case under Virginia law, arising from a shooting accident, the plaintiff has filed a motion for partial summary judgment on the question of the defendant's liability. Finding that there are no material issues of fact in dispute and that the evidence establishes as a matter of law that the defendant acted negligently in the use of his firearm, I will grant the motion for summary judgment.

### I. Facts.

On November 10, 1995, Randy Souleyrette and Ronnie Lee Conaway engaged in shooting at paper plates set up as targets on Conaway's property in Dickenson County, Virginia. Souleyrette and Conaway were shooting with a .22 rifle and a Remington 12–gauge pump-action shotgun, both of which were owned by Conaway. After firing for some time, Conaway replaced the paper plates and while Souleyrette was picking up spent shotgun shells, Conaway reloaded his shotgun.

Conaway stated that in reloading the shotgun, he placed one shell directly into the chamber of the firearm instead of loading shells into the magazine.[1] After placing the shell in the firing chamber, Conaway pumped the shotgun, thereby closing the chamber opening, and the weapon fired. Souleyrette, who was standing in the path of the shot, was hit in the hand and thigh. Conaway rushed Souleyrette to a friend's home and the friend took Souleyrette to the hospital. Conaway proceeded to the local Virginia State Police office where he explained to special agent Jack Davidson of the State Police's Bureau of Criminal Investigation that he had accidentally shot Souleyrette. Davidson returned with Conaway to the scene of the accident and Conaway made a written statement. In his statement, Conaway described the shooting as follows:

> We were standing a short distance from the target when Randy told me to shoot a plastic bag across the road in a branch. I placed a shell in the chamber rather than the magazine of the shotgun. I always loaded the shotgun by placing a round in the chamber first and then loading the magazine. When I pushed the slide for-

---

1. The magazine of the shotgun is located on the underside of the shotgun. By loading shells into the magazine, the weapon can be loaded without placing shells directly into the firing chamber.

After the shells are loaded into the magazine a single shell is loaded into the firing chamber by "pumping" the shotgun, i.e., by sliding the pump arm of the gun.

ward the shotgun discharged. I didn't know that I had shot Randy until he and I looked at his hand. He was standing to my left when the gun discharged. I always shoot from the right side and I'm right-handed. I dropped the shotgun, ran to the house to get some towels to stop the bleeding.

(Dep. Jack Davidson at 12–13.)

On November 17, 1995, Conaway gave another written statement to Davidson. Therein, he stated that:

I believe Randy said something about shooting at a plastic bag in the branch of a tree.... After he told me that, I took the live round out of my pocket and placed it in the chamber and not the magazine of the shotgun. Now this is the best I can remember. As I pushed the slide to the shotgun forward, the gun discharged. I don't know if I had my hand or finger on the trigger of the gun. The shot struck Randy. As to loading the shotgun, I have loaded shells in the chamber first and then the magazine and have placed shells in the magazine first before loading the chamber. There is no certain way that I would load a shotgun. The last time that I fired the shotgun that Randy was shot with was approximately two or three years ago at a shooting match. The gun has never misfired on me before.

(Jack Davidson Dep. at 19.) During his deposition, Conaway testified as follows regarding the shooting:

Q. Is this shotgun a pump action shotgun?

A. Yeah. Yes, sir.

Q. All right. Did you put a shell directly in the chamber?

A. I don't even recall. It seemed to me like I did.

Q. Okay. After you put it in the chamber, you—

A. Wrenched it up.[2]

Q. With the pump?

A. The forearm.

Q. What is it called?

A. Well, I call it forearm.

Q. When you wrenched it up, where was your other hand?

A. Well, just like I told the investigator, I don't recall if I had my hand, my finger on the trigger of the gun. When I wrenched a shell up it went off. I couldn't tell you....

Q. Uh-huh.

A. I just don't recall to be honest with you.

. . .

Q. Okay. Before you put the shell in the chamber, do you recall whether you put the safety on?

A. I don't even recall.

Q. Did you have any trouble with the gun that day?

A. No.

Q. Did it malfunction in any way that you know of?

A. Not as I can recall.

. . .

Q. What is the proper method of loading shells in that shotgun?

A. I didn't have any literature on it, but common sense will tell you to put your safety on and load your bottom and then wrench your shell up in your chamber.

Q. If you load the shell in the bottom, where would you be loading the shell into? I'm not trying to be tricky. I'm not a shotgun person.

A. What would you be loading the shell into?

Q. Yeah.

A. Well, your magazine.

Q. As far as you know, is that the proper way to load the shotgun?

A. Yes.

---

**2.** During oral argument on this motion, counsel explained that by "wrenched it up," Conaway meant that after putting the shell directly into the firing chamber Conaway "pumped" the shotgun with the pump or "forearm," which closed the chamber opening, making it possible to fire the shotgun.

. . .

Q. Did Randy do anything that contributed to his being shot?

A. Not as I know of.

(Ronnie Lee Conaway Dep. at 10–12, 14, 17.)

Davidson seized the shotgun, rifle, and shotgun casings from Conaway's home[3] and submitted the shotgun and shell casings to the Virginia Bureau of Forensic Science. Examination of the weapon revealed that it was in proper mechanical operating condition and that the safety feature functioned properly. (Jack Davidson Dep. at 16.)

On October 30, 1997, Souleyrette filed this action pursuant to the court's diversity jurisdiction, seeking damages for his injuries suffered in the shooting. The case is now before the court on Souleyrette's motion for partial summary judgment as to liability.[4]

### II. Standard of Review.

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact, and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant bears the initial burden to identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material facts are those determinative of the outcome of an issue as determined by the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the movant has done this, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In deciding a motion for summary judgment, the court must interpret all facts in a light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

Where, as here, the moving party bears the burden of persuasion on the issue at trial, its showing must sustain that burden as well as demonstrate the absence of a genuine dispute. *Celotex Corp.*, 477 U.S. at 323, 331–32, 106 S.Ct. 2548. Accordingly, in this case the plaintiff must also demonstrate that it would be entitled to judgment as a matter of law. *See, e.g., United States v. One 107.9 Acre Parcel of Land Located in Warren Township*, 898 F.2d 396, 398 (3d Cir.1990); *United States v. O'Connell*, 890 F.2d 563, 567 (1st Cir.1989). Such a showing may be made with pleadings filed by the opponent, depositions, answers to interrogatories, admissions, and affidavits. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

### III. Analysis.

#### A. Genuine Issues of Material Fact.

 To prevail on his motion for summary judgment Souleyrette must establish that there are no genuine issues of material fact and that Conaway failed to exercise proper care[5] in the use of his firearm. Conaway argues that the issue of whether he exercised the necessary level of care is itself a question of fact which must be decided by the jury. While questions of negligence, i.e., questions of whether a party has conformed with a given standard of care, are generally regarded as being within the special competence of the jury, where the facts are undisputed and only one conclusion may reasonably be drawn from them, negligence becomes a matter of law. *Bland v. Norfolk & S.R.R.*, 406 F.2d 863, 866 (4th Cir.1969); *West v. State Farm Fire & Cas. Co.*, 868 F.2d 348, 350 (9th Cir.1989); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2729, at 551–55 (3d ed.1998).

In *Bland*, the Fourth Circuit observed that "[b]ecause of the peculiarly elusive nature of the concept of negligence, it is the rare personal injury case that may be properly dis-

---

3. During investigation of the shooting, Davidson determined that Conaway was a convicted felon and was therefore unlawfully in possession of the firearms.

4. "A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." Fed.R.Civ.P. 56(c).

5. The proper standard of care to be applied in this case is considered *infra* at III.B. Because the accident occurred in Virginia, Virginia law applies.

posed of by summary judgment." 406 F.2d at 866. However, the court proceeded to hold that in that "unusual" case, where the facts, if otherwise undisputed, establish negligence, the nonmoving party need not "have his day in court even though there is nothing to be tried." *Id.* In *West*, the Ninth Circuit reached the same conclusion, holding that "California and federal courts have held that in certain circumstances reasonableness may be decided as a matter of law" and "that while reasonableness is generally a question of fact for the jury, it becomes a question of law and loses its triable character if the undisputed facts leave no room for a reasonable difference of opinion." 868 F.2d at 350 (citations omitted).

Here, there is no dispute as to the incidents leading up to and ultimately resulting in the shooting. It is undisputed that the shotgun had not previously misfired, that it was in proper working order after the shooting, that Conaway loaded a shell directly into the chamber of the shotgun, that he pumped the gun while it was pointed at Souleyrette, and that he loaded the shotgun without being aware of whether the safety was engaged. Conaway's inability to recall whether he had the safety on or whether his finger was on the trigger does not serve to create a genuine issue of material fact. Testing of the weapon revealed that it functioned properly and that the safety feature was operative. The fact that the gun fired permits no reasonable inference other than the conclusion that Conaway did have his finger on the trigger and that he did not have the safety engaged.

Souleyrette contends that because there might be some other possible explanation for the shotgun firing summary judgment is precluded. I find this argument unpersuasive. As the Fourth Circuit recently noted,

> [w]hen determining a motion for summary judgment, the court need not credit the non-movant with every possible inference that can be drawn from the evidence. Only reasonable inferences warrant consideration. A reasonable inference is one

that is within the range of reasonable probability. An inference that is 'so tenuous that it rests merely upon speculation and conjecture' should not be considered. *Brown v. Rose's Stores, Inc.*, No. 97–2689, 1998 WL 230914, at *2 (4th Cir. May 7, 1998) (citation omitted) (unpublished). Here, the fact that the weapon had never misfired and that it was subsequently determined to be in proper working order eliminates any reasonable probability that the gun fired without Conaway's finger on the trigger, or with the safety on. To suppose some other unexplained reason for the weapon firing, without specification of the alternate cause and evidence to support it, is to impermissibly rely on speculation and conjecture.

### B. Negligence.

■ Because Conaway has failed to establish the existence of any genuine issues of material fact, the sole question remaining is whether the facts as established support a finding, as a matter of law, that Conaway failed to exercise "ordinary" or "reasonable" care [6] in using his shotgun.

■ The Virginia Supreme Court has established that "negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such person would not have done under existing circumstances." *Moore v. Virginia Transit Co.*, 188 Va. 493, 50 S.E.2d 268, 271 (1948). Accordingly, ordinary or reasonable care is "that degree of care which an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury to another." *Perlin v. Chappell*, 198 Va. 861, 96 S.E.2d 805, 808 (1957). Souleyrette mistakenly contends that because Conaway was handling a firearm, he was required to exercise more than ordinary care. (Pl.'s Br. Supp. Mot. Summ. J. at 6.) All that was required of Conaway was ordinary care. *See Virginia Ry. & Power Co. v. Smith*, 117 Va. 418, 84 S.E. 641, 642 (1915); Charles E. Friend, *Personal Injury Law in Virginia* 12 (1990). This is not to say, however, that

---

**6.** Due care, reasonable care, and ordinary care are used synonymously. *See* Charles E. Friend,

*Personal Injury Law in Virginia* 12 (1990).

Conaway was not required to exhibit considerable care in handling his firearm. "Because the circumstances of a given situation affect the standard of care required, when the situation presents a high degree of risk, 'ordinary' care may involve great caution." Friend, *supra*, at 12.

Occasionally, opinions stating this principle discuss "degrees of care." *See Smith*, 84 S.E. at 642 (holding that "[o]rdinary care is care commensurate with the occasion; and when the dangers are great, it may be a very high degree of care"). Such opinions do not stand for the proposition that some standard other than "ordinary" or "reasonable" care is to be applied. "[I]n fact the standard is always the same, to wit, *what is reasonable (or ordinary) under the circumstances.* Where the danger is great, only great caution is 'reasonable.'" Friend, *supra*, at 12 (citing *Meador v. Lawson*, 214 Va. 759, 204 S.E.2d 285 (1974)) (emphasis in the original).

█ In determining what behavior actually satisfies the general rubric of "reasonable care," the court must look to the customs of the community. *See* W. Page Keeton et al., *Prosser and Keeton on Torts* § 33, at 193 (5th ed.1984); *Powell v. John E. Hughes Orphanage*, 148 Va. 331, 138 S.E. 637, 641 (1927); *Cooks Adm'x v. City of Danville*, 116 Va. 383, 82 S.E. 90, 90 (1914). Because ordinary or reasonable care is a "community standard, evidence of the usual and customary conduct of others under similar circumstances is normally relevant and admissible, as an indication of what the community regards as proper, and a composite judgment as to the risks of the situation and the precautions required to meet them." Prosser, *supra*, at 193. *See also Powell*, 138 S.E. at 641. Accordingly, I have considered the deposition testimony of the defendant and the affidavit of Lt. James Myers of the Bristol Virginia Police Department, in determining what constitutes ordinary care in the use of a firearm under the circumstances of this case.

Myers has a been a police firearms instructor for twenty years and presently serves as the firearms instructor for the Virginia Department of Criminal Justice Services and as administrative division commander for the Bristol Virginia Police Department. In Myer's opinion, reasonable care in the use of a firearm requires that: (1) "you never point a firearm at someone you do not intend to shoot," (2) "[a]ny time a weapon is loaded it should be set on 'Safe;'" and (3) "[o]ne should not load a round directly into the chamber except in an emergency." (Lt. James Myers Aff. at 2.)

Conaway's own opinion about the proper use of a firearm is essentially identical to that of Myer's. When asked about the proper method of loading his shotgun, Conaway responded as follows:

A. I didn't have any literature on it, but *common sense will tell you to put your safety on and load your bottom* and then wrench your shell up in your chamber.

Q. If you load the shell in the bottom, where would you be loading the shell into? I'm not trying to be tricky. I'm not a shotgun person.

A. What would you be loading the shell into?

Q. Yeah.

A. Well, your magazine.

Q. As far as you know, is that the proper way to load the shotgun?

A. Yes.

(Ronnie Lee Conaway Dep. at 14 (emphasis added).)

By his own admission, Conaway loaded a shell directly into the chamber and then pumped the shotgun without being certain that the safety was on or that the weapon was not pointed at Souleyrette. Such evidence is more than sufficient to establish that Conaway's conduct did not conform to the community's standard for ordinary care in the use of a firearm and that no reasonable jury could reach a contrary conclusion.

Accordingly, finding that there are no genuine issues of material fact and that the facts establish that Conaway failed to exercise ordinary care in the use of his shotgun, I will

grant Souleyrette's motion for partial summary judgment.[7]

### III. Conclusion.

For the reasons set forth above, it is **OR-DERED** the plaintiff's motion for partial summary judgment as to liability is granted. A jury will determine the question of damages at trial.

---

**7.** The defendant does not contend that plaintiff was guilty of contributory negligence or assump-tion of the risk, so as to bar his claim.