**James Walter BONHAM, Appellant,**

v.

**DISTRICT OF COLUMBIA LIBRARY ADMINISTRATION, Appellee.**

No. 91–7017.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 15, 1992.

Decided April 16, 1993.

Michael Vatis, amicus curiae appointed by the Court, with whom Kenneth S. Geller, Washington, DC, was on the brief, supporting appellant.

Lutz Alexander Prager, Asst. Deputy Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, were on the brief, for appellee.

Before: MIKVA, Chief Judge, WALD and EDWARDS, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

MIKVA, Chief Judge:

James Walter Bonham appeals the district court's dismissal of his complaint alleging that the District of Columbia's practice of closing a public library branch on Easter Sunday violates the Establishment Clause of the First Amendment to the United States Constitution. Because Mr. Bonham might be able to prove a set of facts that would entitle him to relief, and because the district court failed to allow the presentation of evidence essential to the proper legal analysis of Mr. Bonham's claim, we reverse the district court order dismissing Mr. Bonham's complaint and remand for further proceedings.

## I. BACKGROUND

The Martin Luther King Memorial Library ("MLK") is the main branch of the District of Columbia public library, and the only branch normally open on Sunday. According to his complaint, James Walter Bonham went to MLK on April 15, 1990 to find a sign at the locked entrance stating that the library was closed for Easter. He filed a *pro se* complaint in the district court, arguing that the library closing violated the Establishment Clause and seeking nominal damages and costs against the District of Columbia.

The District initially moved for dismissal under Federal Rule of Civil Procedure 12(b)(6) on the grounds that the complaint failed to provide fair notice of the nature of Mr. Bonham's claim and was improperly served under Federal Rule of Civil Procedure 4(c)(2)(C). The district court did not address these procedural arguments, choosing instead to dismiss the complaint for failure to state a claim on the basis of the court's legal conclusion that the Easter closing policy did not constitute a violation of the Establishment Clause.

The district court recognized that Easter is a religious holiday, but postulated "numerous secular reasons for closing public facilities on holidays such as Christmas or Easter." *Bonham v. District of Columbia*, No. 90–0992, slip op. at 3 (D.D.C. December 20, 1990) (*"Memorandum Opinion"*). Although the District of Columbia had offered the court no explanation for closing MLK on Easter, the court suggested that the prospect of low demand for library services and problems with staffing provided secular justifications for the practice. The court concluded that "the Constitution does not require the government to hold itself oblivious to the important holidays—religious or otherwise—that affect the daily routines of its employees and constituents." *Id.*

The court also stated that "Supreme Court precedents establish decisively that closing a public facility on a religious holiday does not constitute endorsement." *Id.* at 2. The district court stated that in *Lynch v. Donnelly*, 465 U.S. 668, 676, 104 S.Ct. 1355, 1360, 79 L.Ed.2d 604 (1984), the Supreme Court noted with approval presidential and congressional proclamations of Christmas and Thanksgiving as national holidays and paid leave days for federal employees. *Memorandum Opinion* at 2–3. The district court also cited Supreme Court decisions upholding "blue laws" that prohibited the operation of certain businesses on Sunday. *Id.* at 3–4 (citing *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), and *Gallagher v. Crown Kosher Super Market*, 366 U.S. 617, 81 S.Ct. 1122, 6 L.Ed.2d 536 (1961)).

Mr. Bonham filed a notice of appeal, and both he and the District of Columbia briefed the case. This Court subsequently ordered the appointment of *amicus curiae* to brief the claims advanced by Mr. Bonham. This appeal was considered on the basis of the revised briefs and the arguments of *amicus* and the District of Columbia.

## II. ANALYSIS

The district court should not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plain-

tiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The gravamen of Establishment Clause claims is the three-prong test articulated by the Supreme Court in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). *See United Christian Scientists v. First Church of Christ,* 829 F.2d 1152, 1161 (D.C.Cir.1987) (*Lemon* test is the "touchstone for evaluating church-state relations under the Establishment Clause"); *County of Allegheny v. American Civil Liberties Union, Greater Pittsburgh Chapter,* 492 U.S. 573, 592 & n. 44, 109 S.Ct. 3086, 3100 & n. 44, 106 L.Ed.2d 472 (1989) (*Lemon* test has been "applied regularly in the Court's later Establishment Clause cases"); *Lee v. Weisman,* —— U.S. ——, ——, 112 S.Ct. 2649, 2655, 120 L.Ed.2d 467 (1992) ("we do not accept the invitation ... to reconsider our decision in *Lemon* ").

■ In order to pass constitutional muster under the *Lemon* test, laws and government practices involving religion must: (1) have a secular legislative purpose; (2) have a principal or primary effect that neither advances nor inhibits religion; and (3) not result in excessive entanglement with religion or religious institutions. *Lemon,* 403 U.S. at 612–13, 91 S.Ct. at 2111–12; *Lynch v. Donnelly,* 465 U.S. 668, 679, 104 S.Ct. 1355, 1362, 79 L.Ed.2d 604 (1984); *County of Allegheny,* 492 U.S. at 592, 109 S.Ct. at 3100.

■ The district court's dismissal of Mr. Bonham's complaint must be vacated because the court could not properly conclude, based solely on the complaint, that Mr. Bonham would be unable to prove a set of facts entitling him to relief. For example, Mr. Bonham would certainly prevail under the "purpose" prong of the *Lemon* test if the Board of Library Trustees had officially declared that MLK was closed on Easter for the sole purpose of "honoring and celebrating the resurrection of Jesus Christ." *See United Christian Scientists,* 829 F.2d at 1162 (" '[T]he First Amendment requires that a statute ... be invalidated if

it is entirely motivated by a purpose to advance religion.' ") (quoting *Wallace v. Jaffree,* 472 U.S. 38, 56, 105 S.Ct. 2479, 2489, 86 L.Ed.2d 29 (1985)). As the District of Columbia itself concedes, the "closed for Easter" sign posted at MLK permitted an inference that the library was closed for a constitutionally impermissible reason. The district court's conclusion to the contrary was wholly speculative.

Although failure to satisfy any one prong of the *Lemon* test is sufficient to compel invalidation of the challenged law or practice, *United Christian Scientists,* 829 F.2d at 1161, we also note that the hypothetical purpose that we offer above might raise additional problems under *Lemon* 's "entanglement" prong. If the District of Columbia were choosing to close the library on Easter based on the religious significance of the holiday, it would be faced with selecting one of the days on which different Christian churches celebrate Easter. Thus, the District would be forced to decide matters of "deep religious significance," *Aguilar v. Felton,* 473 U.S. 402, 414, 105 S.Ct. 3232, 3239, 87 L.Ed.2d 290 (1985), and to "lend its power to one or the other side in controversies over religious authority or dogma," *Employment Division v. Smith,* 494 U.S. 872, 877, 110 S.Ct. 1595, 1599, 108 L.Ed.2d 876 (1990). *But see Cammack v. Waihee,* 932 F.2d 765, 781 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3027, 120 L.Ed.2d 898 (1992) (use of ecclesiastical calendar or World Almanac to decide when lunar-based Good Friday falls does not entangle the state in religion); *Cammack,* 932 F.2d at 789 (Nelson, J., dissenting) (choice of day for Good Friday troubling, but no "sufficiently enduring entanglement").

■ The district court's discussion of the District of Columbia's purpose in closing MLK was based entirely on conjecture and cannot support the court's dismissal of Mr. Bonham's claim under Federal Rule of Procedure 12(b)(6). In determining the legislative purpose of a law or government practice, courts generally look to the text of a statute or rule, legislative history, administrative interpretations, testimony of parties

who participated in the enactment or implementation of the challenged law or practice, historical context, and the sequence of events leading to the passage of the law or the initiation of the practice. *See Edwards v. Aguillard,* 482 U.S. 578, 594–95, 107 S.Ct. 2573, 2582–84, 96 L.Ed.2d 510 (1987); *United Christian Scientists,* 829 F.2d at 1163 n. 50. The district court must permit discovery or presentation of affidavits and other proofs regarding these factors so that the court may properly consider whether the MLK closing has a secular legislative purpose or will result in excessive entanglement.

The district court's analysis under the "effect" prong of the *Lemon* test was also flawed. The Supreme Court has recently focused the effect inquiry on whether the challenged law or practice conveys a message of endorsement of religion over nonreligion or of one religion over another. *County of Allegheny,* 492 U.S. at 592, 109 S.Ct. at 3100; *Aguillard,* 482 U.S. at 594, 107 S.Ct. at 2583; *Grand Rapids School District v. Ball,* 473 U.S. 373, 389, 105 S.Ct. 3216, 3225, 87 L.Ed.2d 267 (1985); *Wallace v. Jaffree,* 472 U.S. 38, 61, 105 S.Ct. 2479, 2492 (1985). Although the district court did address the question of endorsement, its casual reliance on *Lynch v. Donnelly,* 465 U.S. 668, 676, 104 S.Ct. 1355, 1360, 79 L.Ed.2d 604 (1984), and the companion cases of *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), and *Gallagher v. Crown Kosher Super Market,* 366 U.S. 617, 81 S.Ct. 1122, 6 L.Ed.2d 536 (1961), is also insufficient to support the dismissal of Mr. Bonham's complaint.

■ Before proceeding to the merits of the district court's "effect" analysis, we note one additional problem. The court's opinion could be read to suggest that analysis under the effect prong of the *Lemon* test might be unnecessary in the case of a *"de minimis"* endorsement of religion. *See Memorandum Opinion* at 4 ("[T]he District's action affected a single day of the year, a day that is normally celebrated as a day of rest throughout the nation (because it falls on a Sunday). The impact of this Sunday closing ... cannot have been consequential in a constitutional sense.") To the extent that this passage suggests a *de minimis* exception to traditional Establishment Clause analysis, it is at odds with existing authority. *See Hall v. Bradshaw,* 630 F.2d 1018, 1021 (4th Cir. 1980) ("no *de minimis* exception is tolerable"); *Friedman v. Board of County Commissioners,* 781 F.2d 777, 781 n. 3 (10th Cir.1985) (quoting *Abington School District v. Schempp,* 374 U.S. 203, 225, 83 S.Ct. 1560, 1573, 10 L.Ed.2d 844 (1963)) ("[I]t is no defense to say that the government's action represents a 'relatively minor encroachment on the First Amendment.'"). To the extent that the court was simply holding that the MLK closing is not an endorsement under *Lemon* and its progeny, the following discussion explains why the decision must be remanded.

The Supreme Court rested its opinions in *Lynch,* allowing the inclusion of a crèche in a city Christmas display, and in *McGowan* and *Gallagher,* upholding "blue laws" prohibiting certain businesses from operating on Sundays, on the fact that Christmas and Sunday were days that had acquired significant secular meaning and traditions. None of the cases stands for the categorical proposition pronounced by the district court that "closing a public facility on a religious holiday does not constitute endorsement." *See Memorandum Opinion* at 2. The resolution of the endorsement question requires a more factbound analysis, focusing on factors such as whether Easter has been similarly "secularized," and whether the city has sought to counteract or neutralize any possible religious message. *See Lynch,* 465 U.S. at 693–94, 104 S.Ct. at 1370 (O'Connor, J., concurring) (stating that "[e]very government practice must be judged in its unique circumstances to determine whether it [endorses] religion" and observing that evidentiary submissions aid the court in answering this legal question).

We choose not to speak to the likely legal outcome under these scenarios—just as we offered no definitive statement of the result under the hypothetical facts discussed earlier in the opinion with regard to the

first and second prongs of the *Lemon* test—because they are wholly speculative. Rather, the district court should provide the parties with an opportunity to present the relevant facts to the court so that each of three prongs of the *Lemon* test may be properly applied.

*Reversed and remanded.*