Richard GANULIN, Plaintiff,

v.

UNITED STATES of America,
Defendant,

and

Jeffrey Niemer, et al.  Defendant–
Intervenors.

No.  C–1–98–557.

United States District Court,
S.D. Ohio,
Western Division.

Dec. 6, 1999.

Richard Ganulin, Cincinnati, OH, pro se.

Donetta Donaldson Wiethe, U.S. Dept. of Justice, Cincinnati, OH, Joseph Steven Justice, Taft, Stettinius & Hollister, Cincinnati, OH, for U.S., defendant.

Joseph Steven Justice, Taft, Stettinius & Hollister, Cincinnati, OH, for Jeffery Niemer, Patty Hempstead, Anne Dolan, intervenors.

### ORDER GRANTING MOTIONS TO DISMISS

DLOTT, District Judge.

THE COURT WILL ADDRESS PLAINTIFF'S SEASONAL CONFUSION ERRONEOUSLY BELIEVING CHRISTMAS *MERELY A RELIGIOUS INTRUSION.*

WHATEVER THE REASON CONSTITUTIONAL OR OTHER CHRISTMAS *IS NOT* AN ACT OF BIG BROTHER!

CHRISTMAS IS ABOUT JOY AND GIVING AND SHARING IT IS ABOUT THE CHILD WITHIN U.S. IT IS MOSTLY ABOUT CARING!

ONE IS NEVER JAILED FOR NOT HAVING A TREE FOR NOT GOING TO CHURCH FOR NOT SPREADING GLEE!

THE COURT WILL UPHOLD SEEMINGLY CONTRADICTORY CAUSES

DECREEING *"THE ESTABLISH-MENT"* AND *"SANTA"* **BOTH** WORTH-WHILE *"CLAUS(es)!"*

WE ARE ALL BETTER FOR SANTA THE EASTER BUNNY TOO AND MAYBE THE GREAT PUMPKIN TO NAME JUST A FEW!

AN EXTRA DAY OFF IS HARDLY HIGH TREASON IT MAY BE SPENT AS YOU WISH *REGARDLESS* OF REASON.

THE COURT HAVING READ THE LESSONS OF "LYNCH"[1] *REFUSES* TO PLAY THE ROLE OF THE GRINCH![2]

THERE IS ROOM IN THIS COUNTRY AND IN ALL OUR HEARTS TOO FOR DIFFERENT CONVICTIONS AND A DAY OFF TOO!

This matter is before the Court on the Defendant United States' Motion to Dismiss (doc. # 21) and Defendant–Intervenors Jeff Neimer's, Anne Dolan's, and Patty Hemsath's Motion to Dismiss (doc. # 22), pursuant to Rule 12 of the Federal Rules of Civil Procedure. The Defendant and Defendant–Intervenors seek dismissal of Plaintiff Ganulin's Amended Complaint, which challenges the constitutionality of 5 U.S.C. § 6103. Section 6103 declares Christmas Day to be a legal public holiday. Plaintiff Ganulin has filed briefs opposing dismissal and the Christian Coalition has filed an amicus curiae brief in favor of dismissal. The Court has carefully considered all the filings and the relevant case law. Upon consideration of the law, the Motions to Dismiss are hereby **GRANTED.**

## I. PROCEDURAL BACKGROUND

Plaintiff Ganulin filed a Complaint against the United States of America on August 4, 1998 alleging that the statute making Christmas Day a legal public holiday violated the Establishment Clause of

the First Amendment to the United States Constitution ("the Establishment Clause"). Jeffrey Niemer, Patty Hemsath, and Anne Dolan moved to intervene pursuant to Rule 24(a) of the Federal Rules of Civil Procedure on November 2, 1998 and were granted status as defendant-intervenors on November 6, 1998. Defendant–Intervenors are federal employees seeking to protect their interest in the employment benefit of a Christmas holiday.

Plaintiff filed an Amended Complaint on November 25, 1998 claiming that a legal public holiday on Christmas Day pursuant to 5 U.S.C. § 6103 violates the Establishment Clause and interferes with his rights to equal protection and freedom of association protected by the United States Constitution. Defendant and Defendant–Intervenors then filed their Motions to Dismiss and the Christian Coalition filed an amicus curiae brief. They argue that Plaintiff lacks standing to bring this action and that he has failed to state a claim upon which relief can be granted.

## II. LEGAL STANDARD FOR MOTIONS TO DISMISS

The purpose of a motion to dismiss or a motion for judgment on the pleadings is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if all facts and allegations in the complaint are true. *See Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993). For purposes of dismissal under Rules 12(b)(6) or 12(c), the complaint must be construed in the light most favorable to the nonmoving party and its allegations taken as true. *See Miller v. Currie,* 50 F.3d 373, 377 (6th Cir.1995). To survive a motion for judgment on the pleadings, "a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859

---

**1.** *Lynch v. Donnelly,* 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984).

**2.** Dr. Seuss, *How the Grinch Stole Christmas.*

F.2d 434, 436 (6th Cir.1988) (citations and internal quotations marks omitted); *accord Columbia Natural Resources, Inc. v. Tatum,* 58 F.3d 1101, 1109 (6th Cir.1995). The test for dismissal, however, is a stringent one. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Monette v. Electronic Data Systems Corp.,* 90 F.3d 1173, 1189 (6th Cir.1996).

Consequently, a complaint will not be dismissed pursuant to a motion for judgment on the pleadings unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint. Because a motion for judgment on the pleadings is directed solely to the complaint, the focus is on whether the plaintiff is entitled to offer evidence to support the claims, rather than on whether the plaintiff will ultimately prevail. *See Roth Steel Prods. v. Sharon Steel Corp.,* 705 F.2d 134, 155 (6th Cir.1983); *Haffey v. Taft,* 803 F.Supp. 121, 127 (S.D.Ohio 1992).

### III.   ANALYSIS

#### A.   Standing

Defendant and Defendant–Intervenors both move for dismissal on the grounds that Ganulin lacks standing to pursue these claims in federal court. A review of the basic precepts of standing and the special precepts for standing in Establishment Clause cases and taxpayer cases is in order before discussing the arguments of the parties.

The jurisdiction of the federal courts is limited by Art. III of the Constitution to "Cases" and "Controversies." Inherent in the case-or-controversy limitation are two concerns. First, "those words limit the business of the federal courts to questions presented in an adversary context and in a form historically viewed as capable of reso-

lution through the judicial process." *Flast v. Cohen,* 392 U.S. 83, 95, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Second, "those words define the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to other branches of government." *Id.* The dual limitation imposed by the case-or-controversy requirement is often referred to as justiciability. *See id.*

■ The concept of standing is one aspect of justiciability. *See id.* at 98, 88 S.Ct. 1942. At an irreducible minimum, the Constitution requires that the party invoking jurisdiction bear the burden of proving the following three elements: First, the plaintiff must have suffered an injury in fact-an actual injury which is concrete and particularized. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant. Third, it must be likely, and not merely speculative, that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Briggs v. Ohio Elections Comm'n,* 61 F.3d 487, 491 (6th Cir.1995).

On a motion to dismiss "general factual allegations of an injury resulting from the defendant's conduct may suffice [because] we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130 (quoting *Lujan v. National Wildlife Fed.,* 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

#### 1.   Standing in First Amendment and Establishment Clause Cases

■ There are special concerns in First Amendment and Establishment Clause cases regarding standing. Plaintiffs bringing claims pursuant to the Establishment Clause or other First Amendment rights must meet all three aspects of

the *Lujan* test to establish standing. However, the Sixth Circuit has noted that First Amendment plaintiffs do not bear a heavy burden, *see Briggs,* 61 F.3d at 492, and the standing inquiry in Establishment Clause cases can be tailored to reflect the type of injury Establishment Clause plaintiffs are likely to suffer, *see Suhre v. Haywood Cty.,* 131 F.3d 1083, 1086 (4th Cir. 1997). Plaintiffs must allege more than an abstract injury, but actual injury to individual values of an abstract or esoteric nature can provide the basis for standing. *See id.* In conducting its standing inquiry, the courts must be careful not to find standing for a plaintiff on the assumption that no one will be found to have standing if the plaintiff at bar lacks standing. *See Valley Forge Christian College v. Americans United for the Separation of Church and State,* 454 U.S. 464, 489, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). The federal courts are not always the proper vehicle for seeking to correct constitutional wrongs. *See id.*

The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizens's interest in the proper application of the Constitution and the laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large" lacks standing. *Lujan,* 504 U.S. at 573–74, 112 S.Ct. 2130. For example, a plaintiff would not have standing if his or her sole complaint was that a government act or policy violated the Constitution. *See Valley Forge,* 454 U.S. at 485, 102 S.Ct. 752. The respondents in *Valley Forge* sought the district court to declare unconstitutional a decision of the Department of Health, Education, and Welfare to convey a tract of land to the Valley Forge Christian College. *See id.* at 468, 102 S.Ct. 752. The Supreme Court noted that while the respondents were clearly committed to the principle of church and state separation, they lacked standing because they failed "to identify any personal injury suffered by them as a consequence of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees." *Id.* at 485–86, 102 S.Ct. 752.

Conversely, a plaintiff objecting to a state sponsored display of religious symbols has standing because his or her injury is caused by unwelcome, personal and direct contact with the religious display. *See Suhre,* 131 F.3d at 1086. "[D]irect contact with an unwelcome religious exercise or display works a personal injury distinct from and in addition to each citizen's general grievance against unconstitutional government contact." *Id.* at 1086. Similarly, the Sixth Circuit held that a plaintiff alleging direct contact with a portrait of Jesus hanging in a public school had standing because "use of governmental authority to encourage a sectarian religious view is sufficient injury if directed towards the plaintiff." *Washegesic v. Bloomingdale Public Sch.,* 33 F.3d 679, 682 (6th Cir. 1994); *see also Granzeier v. Middleton,* 955 F.Supp. 741, 743 n. 2 (E.D.Ky.1997) (finding that plaintiff's repeated exposure to signs allegedly endorsing religion in the county courthouse and inability to conduct business in the courthouse on Good Friday was sufficient to confer standing) *aff'd* 173 F.3d 568 (6th Cir.1999).

In another case, the Sixth Circuit held that residents of the Cleveland area had standing to object to the decision of the Cleveland Hopkins International Airport to lease space to a religious organization for use as a chapel. The court stated that even if the plaintiffs could "avoid the chapel area . . . . this impingement on their right to use the airport is sufficient to confer standing since it would 'force them to assume special burdens' to avoid 'unwelcome religious exercises.'" *Hawley v. City of Cleveland,* 773 F.2d 736, 740 (6th Cir.1985) (quoting *Valley Forge,* 454 U.S. at 487 n. 22, 102 S.Ct. 752).

### 2. Standing in Taxpayer Cases

Finally, and before turning to the specific allegations of standing raised by Ganu-

lin, the Court must examine one more avenue of establishing standing: taxpayer standing. The Supreme Court first addressed the question of whether taxpayers had standing to object to federal expenditures in *Frothingham v. Mellon*, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). The Court ruled that taxpayers had only a "comparatively minute and indeterminable" interest in treasury moneys and that the effect of government expenditures upon future taxation was too "remote, fluctuating, and uncertain" to confer standing on the federal taxpayer. *Id.* at 487, 43 S.Ct. 597. The Court modified *Frothingham* in *Flast*, holding that under certain circumstances taxpayers do have standing to challenge the constitutionality of government expenditures. The Court defined two requirements for taxpayer standing:

> First, the taxpayer must establish a logical link between [the status of federal taxpayers] and the type of legislative enactment attacked. Thus, a taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, s 8, of the Constitution. It will not be sufficient to allege an incidental expenditure of tax funds in the administration of an essentially regulatory statute.... Secondly, the taxpayer must establish a nexus between [the status of federal taxpayers] and the precise nature of the constitutional infringement alleged. Under this requirement, the taxpayer must show that the challenged enactment exceeds the specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, s 8.

*Flast*, 392 U.S. at 102–03, 88 S.Ct. 1942. That is, for example, "taxpayers can sue to enjoin congressional appropriations ... where such appropriations violate a specific constitutional provision, such as the Establishment Clause." *Hawley*, 773 F.2d at 741. In *Flast*, taxpayers were found to have standing to challenge the expenditure of funds for the purchase of instructional materials to be used in parochial schools. *See* 392 U.S. at 103, 88 S.Ct. 1942.

*Flast* does not confer general rights of standing to taxpayers challenging alleged Establishment Clause violations. The Court has subsequently held that taxpayers do not have standing under *Flast* to challenge legislation transferring government property to a religious organization if the conveyance was done under the authority of the Property Clause, Art. IV, § 3, cl. 2, and not under the taxing and spending clause of Art. I, § 8. *See Valley Forge*, 454 U.S. at 480, 102 S.Ct. 752. The *Flast* exception is a narrow one and only applies when an appropriation and not other governmental acts are at issue. *See Hawley*, 773 F.2d at 741.

### 3. Plaintiff Ganulin's Assertions of Standing

Ganulin asserts several bases for standing in his Amended Complaint:

24. 5 USC 6103 interferes with Plaintiff's natural and equal right of free beliefs and practices in matters of religion and culture.

25. 5 USC 6103 is, in effect, a form of imposed assimilation and association on non-Christians.

26. 5 USC 6103 makes it more difficult for Plaintiff to live in a way consistent with his beliefs and practices, makes it more difficult for him to effectively instruct his children about his beliefs and practices, and makes it less likely his children will understand and respect his beliefs and practices.

27. 5 USC 6103 makes Plaintiff feel like an outsider and not an integral part of the political community in the United States.

28. Plaintiff and his family, as residents in and citizens of the United States, are directly and personally exposed to the national legal public holiday

of Christmas Day—December 25 and cannot avoid that exposure.

29. Plaintiff is a federal taxpayer. Plaintiff is also injured because federal tax funds are used pursuant to 5 USC 6103.

Amended Complaint.

The Court has reservations about finding that Ganulin has established standing and shares the concerns raised by the United States, the Defendant–Intervenors and the amicus curiae. First, Ganulin's assertions that 5 U.S.C. § 6103 makes him feel like a political outsider sound like claims of psychological harm. The Supreme Court has stated that psychological harm is not sufficient injury in fact to confer standing. *See Valley Forge*, 454 U.S. at 485, 102 S.Ct. 752.

▪ Second, there is a question of whether the harms of which Ganulin complains are redressable. The Court believes that the majority of Americans, Christians and non-Christians alike, would likely continue to celebrate the secular and religious aspects of Christmas on December 25 of each year whether or not Christmas Day is a legal public holiday. Jewish Americans celebrate Chanukah and children of many diverse religious backgrounds go trick-or-treating on Halloween even though these days are not legal public holidays. If Ganulin only seeks to gain a sense of personal satisfaction in seeing that the Constitution is upheld, then he lacks standing. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 S.Ct. 1003, 1018–19, 140 L.Ed.2d 210 (1998) (stating that psychic satisfaction is not a sufficient Article III remedy to confer standing).

▪ Third, Ganulin asserts federal taxpayer status without expressly stating in what way tax funds are unconstitutionally appropriated. In support of his taxpayer argument, Ganulin cites *Marsh v. Chambers*, 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983). In *Marsh*, a member of the Nebraska legislature opposed the state practice of funding a chaplain to open each legislative day with a prayer. *See id.* at 784–85, 103 S.Ct. 3330. The Supreme Court held that the plaintiff legislator had standing as a member of a legislature and as a taxpayer whose taxes were used to fund the chaplaincy. *See id.* 463 U.S. at 786 n. 4, 103 S.Ct. 3330. The facts in this case are distinguishable from the seminal taxpayer cases, *Marsh* and *Flast*. Taxpayer funds were directly provided to religious entities in *Marsh* and in *Flast*. The practice of celebrating Christmas Day as a legal public holiday does not analogously allocate taxpayer funds to religious organizations. Any potential monetary benefit to religious organizations flowing from the holiday is indirect and remote.

These concerns alone, however, are not reason to find that Ganulin lacks standing. Ganulin likens his case to *Suhre* and *Washegesic* where plaintiffs established standing based on their direct, personal contact with unwelcome religious symbols and displays. *See Suhre*, 131 F.3d at 1084 (display of the Ten Commandments in the county courthouse); *Washegesic*, 33 F.3d at 681 (display of a portrait of Christ in a public secondary school). Ganulin does not explicate further as to the nature of the contact to which he and his family are exposed. The Court presumes that the direct contact Ganulin experiences would be the closing of federal buildings and functions, such as the closing of the federal courts and the postal service, for reasons he asserts are religious in nature.

▪ Although it is a close call, the Court cannot conclude that Ganulin could prove no set of facts in support of his assertion of standing. *See Conley*, 355 U.S. at 45–46, 78 S.Ct. 99. Therefore, the Motion to Dismiss cannot be granted on the grounds that Ganulin lacks standing to bring his claims. The Court turns now to Ganulin's substantive claims and the arguments for dismissal regarding each claim.

## B. Establishment Clause

Ganulin's primary claim is that the establishment of Christmas Day as a legal public holiday violates the Establishment Clause. The Establishment Clause of the First Amendment to the Constitution reads: "Congress shall make no law respecting an establishment of religion." The First Amendment was made binding upon the states by the Fourteenth Amendment. *See Capitol Square Review and Advisory Bd. v. Pinette*, 515 U.S. 753, 757, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995). The language of the Establishment Clause does not make obvious what conduct is prohibited. In *Everson v. Board of Education*, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947), the Supreme Court attempted to define the scope of the Establishment Clause:

> Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another. Neither can force nor influence a person to go or to remain away from church against his will or force him to profess a belief or disbelief in any religion. No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or non-attendance. No tax in any amount, large or small, can be levied to support any religious activities or institutions, whatever they may be called, or whatever form they may adopt to teach or practice religion.

*Id.* at 16, 67 S.Ct. 504. Despite this attempt to define the scope, the Supreme Court admitted in 1971 that it still could "only dimly perceive the lines of demarcation in this extraordinarily sensitive area of constitutional law." *Lemon v. Kurtzman*, 403 U.S. 602, 612, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). The same assessment could be made today.

The Sixth Circuit applies a modified version of the *Lemon* test when reviewing Establishment Clause challenges. *See Granzeier v. Middleton*, 173 F.3d 568, 573 (6th Cir.1999). In *Lemon* the Supreme Court articulated a three part test for examining whether a statute violates the Establishment Clause:

> First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster an excessive government entanglement with religion.

403 U.S. at 612–13, 91 S.Ct. 2105 (internal citations and quotations omitted). As the Sixth Circuit has noted, however, the Supreme Court has applied the "endorsement" test in more recent cases. *See Granzeier*, 173 F.3d at 572.

█ The Sixth Circuit considers the endorsement test to be a clarification of the effects prong of the *Lemon* test. *See id.* at 573. The principle of the endorsement test is that the "Establishment Clause, at the very least, prohibits government from appearing to take a position on questions of religious belief or from 'making adherence to religion relevant in any way to a person's standing in the political community.'" *County of Allegheny v. ACLU Greater Pittsburgh Chapter*, 492 U.S. 573, 594, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) (quoting *Lynch v. Donnelly*, 465 U.S. 668, 687, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984) (O'Connor, J., concurring)). Whether a government act or statute impermissibly endorses religion is judged from the perspective of a reasonable observer. *See Granzeier*, 173 F.3d at 573. Views on both the Sixth Circuit and the Supreme Court are split as to whether the reasonable observer should be deemed to be aware of the history and context of the act or statute in question, *see Capitol Square*, 515 U.S. at 780, 115 S.Ct. 2440 (O'Connor, J., concurring, joined by Souter and Breyer, JJ.); *Americans United for Separation of Church and State v. Grand Rapids*, 980 F.2d 1538, 1543–44 (6th Cir.1992), or whether the reasonable observer should not be deemed to have any special knowledge, *see Capitol Square*, 515 U.S. at 800

n. 5, 115 S.Ct. 2440 (Stevens J., dissenting); *Grand Rapids,* 980 F.2d at 1557 (Lively J., dissenting).

### 1. First Prong—Secular Purpose

■ Ganulin makes two primary assertions concerning the religious nature of Christmas which the Court must accept as true for purposes of these Motions. *See Miller,* 50 F.3d at 377. First, he asserts that Christmas Day is the time when Christians celebrate the birth of Jesus Christ, the individual they believe to be their Messiah. *See* Amended Complaint ¶ 18. Second, he asserts that on Christmas Day Christians celebrate the arrival of the legendary Christian figure "Santa Claus." *See id.* ¶ 19. From these premises, Ganulin concludes that the declaration of Christmas as a legal public holiday necessarily has a religious, sectarian purpose of promoting Christianity. The Court need not reject Ganulin's premises to reach a different conclusion on the secular purpose prong of the *Lemon* test. The Court can accept the religious origins of the Christmas holiday and still conclude that the government is merely acknowledging the secular cultural aspects of Christmas by declaring Christmas to be a legal public holiday.

"A government practice need not be exclusively secular to survive the first part of the *Lemon* test; unless it seems to be a sham, the government's assertion of a secular purpose is entitled to deference." *Granzeier,* 173 F.3d at 574; *see also, Lynch,* 465 U.S. at 680, 104 S.Ct. 1355 (stating that an act or statute will be struck down on the basis of the secular purpose prong only if it "was motivated wholly by religious considerations"). Courts have repeatedly recognized that the Christmas holiday has become largely secularized. Justice Blackmun stated in *County of Allegheny* that "both Christmas and Chanukah are part of the same winter-holiday season, which has attained a secular status in our society." 492 U.S. at 616, 109 S.Ct. 3086 (Blackmun, J.). This

conclusion has been agreed with in both majority and dissenting opinions in the lower courts. *See e.g., Granzeier,* 173 F.3d at 580 (Moore, J., dissenting) (Christmas is "now secularized to a significant extent."); *Koenick v. Felton,* 973 F.Supp. 522, 525 (D.Md.1997) (describing Christmas as a highly secularized holiday) *aff'd* 190 F.3d 259 (4th Cir.1999).

The various opinions expressed by the Supreme Court justices in *Lynch* illustrate that even though the justices have very different beliefs about the constitutionality of some state activities held in association with Christmas, they have not questioned the constitutionality of the legal public holiday itself. In *Lynch,* the Supreme Court concluded that the city of Pawtucket, Rhode Island, could include a religious creche in its public Christmas display along with other secular figures without violating the Establishment Clause. *See* 465 U.S. at 687, 104 S.Ct. 1355. In her concurrence, Justice O'Connor stated that Christmas "has very strong secular components and traditions." 465 U.S. at 692, 104 S.Ct. 1355 (O'Connor, J., concurring). Even the dissenting justices, who objected to the inclusion of the creche, agreed that "the Christmas holiday in our national culture contains both secular and sectarian elements." *Id.* at 709, 104 S.Ct. 1355 (Brennan, J., dissenting, joined by Marshall, Blackmun, and Stevens, JJ.).

The dissenting justices concluded that the Establishment Clause is not offended when justices do "no more than accommodate the calendar of public activities to the plain fact that many Americans will expect on that day to spend time visiting with their families, attending religious services, and perhaps enjoying some respite from pre-holiday activities." *See id.* at 710, 104 S.Ct. 1355 (Brennan, J., dissenting, joined by Marshall, Blackmun, and Stevens, JJ.). The Supreme Court reached similar conclusions in other cases. *See e.g., County of Allegheny,* 492 U.S. at 611–12, 109 S.Ct. 3086 ("[C]onfining the government's own celebration of Christmas to the holiday's

secular aspects ... simply permits the government to acknowledge the holiday without expressing an allegiance to Christian beliefs ...."); *Zorach v. Clauson,* 343 U.S. 306, 313–14, 72 S.Ct. 679, 96 L.Ed. 954 (1952) ("When the state ... cooperates with religious authorities by adjusting the schedule of public events to sectarian needs, it follows the best of our traditions.").

The conclusion that Christmas has a secular purpose is also supported by cases analyzing the constitutionality of school, office, and courthouse closings on other days traditionally celebrated as holy days by Christians. Four circuit courts have concluded that cities may close public functions on the Friday before Easter, which Christians celebrate as Good Friday, the day Jesus Christ was crucified. *See Koenick v. Felton,* 190 F.3d 259 (4th Cir.1999) (creating a public school holiday from the Friday before Easter through the following Monday); *Bridenbaugh v. O'Bannon,* 185 F.3d 796 (7th Cir.1999) (allowing Indiana state employees to have a day off with pay); *Granzeier,* 173 F.3d at 576 (closing of state and county offices and courts); *Cammack v. Waihee,* 932 F.2d 765 (9th Cir.1991) (declaring Good Friday to be a legal holiday).

In these Good Friday decisions, the courts recognized the secularization of the Christmas holiday. *See Koenick,* 973 F.Supp. at 525 (describing Christmas as a highly secularized holiday) *aff'd* 190 F.3d 259 (4th Cir.1999); *cf. Granzeier,* 173 F.3d at 575 (stating that the Christmas holiday is established for the convenience of citizens and individual motivations may be a mix of secular and religious considerations). Circuit Judge Moore, in her dissent in *Granzeier,* implied that she would uphold the constitutionality of a public Christmas celebration by stating that Christmas is now secularized and easily distinguishable from Good Friday. *See* 173 F.3d at 580 (Moore, J., dissenting); *see also, Cammack,* 932 F.2d at 789 (Nelson J., dissenting).

Interestingly, the cases opposing public recognition of religious holidays do not dispute the constitutionality of the Christmas legal public holiday. "Some holidays that are religious, even sectarian, in origin, such as Christmas and Thanksgiving, have so far lost their religious connotation in the eyes of the general public ... [that they] have only a trivial effect in promoting religion." *See Metzl v. Leininger,* 57 F.3d 618, 620 (7th Cir.1995). The *Metzl* court held that a Good Friday school closing law was unconstitutional, but implied that its ruling might change if the state articulated a secular, rather than religious, reason for the closing. *See id. at* 623–24. Not surprisingly then, the Seventh Circuit upheld an Indiana law which gave state employees a paid holiday for Good Friday when the state presented evidence that the day off was recognized in order to create a holiday during a time period where there otherwise would be four months without a holiday. *See Bridenbaugh,* 185 F.3d at 799.

Similarly, the District of Columbia Circuit reversed and remanded a district court opinion dismissing a complaint which alleged that the closing of a public library on Easter violated the Establishment Clause. *See Bonham v. District of Columbia Library Admin.,* 989 F.2d 1242, 1245 (D.C.Cir.1993). The *Bonham* court stated that the plaintiff should have a chance to prove that Easter had not "acquired the significant secular meaning and traditions" that Christmas has acquired. *See id.* at 1245. The appellate court chastised the district court for its categorical proposition that public buildings could be closed on all public holidays, but it did not question the validity of Christmas closings. *See id.*

#### 2. Second Prong—Endorsement

■ The issue under the Sixth Circuit's modified version of the *Lemon* test effects prong is whether a reasonable observer would think that the federal government is endorsing religion by proclaiming Christmas Day to be a legal public holiday. *See Grand Rapids,* 980 F.2d at 1543–44. The

Court must find that the government does not impermissibly endorse religion in general or Christianity in particular by recognizing Christmas Day. An examination of *Granzeier* is instructive. The court noted in *Granzeier* that many details of our calendar system have religious roots-for example, the names of days of the week come from Roman and Norsemen deities and the year is calculated by reference to events from the Christian religion—yet are not violative of the Establishment Clause. *See* 173 F.3d at 575. The court next mentioned in the same discussion that the Christmas holiday was established for the convenience of its citizens. *See id.* When the court then concluded that Good Friday closings are not an endorsement of religion, this Court must conclude the same in reference to Christmas. "[S]o long as the finding can be made that there is a significant secular reason for closing [county government buildings] on any particular date, ... the fact that the closing is also convenient for persons of a particular faith does not render the closing unconstitutional." *Id.* at 576.

Ganulin argues that the recognition of Christmas as a national public holiday pursuant to § 6103 has the primary effect of endorsing sectarian Christian beliefs. The Supreme Court's opinion in *County of Allegheny* implicitly rejects that argument when it explains why the government cannot celebrate Christmas as a religious holiday:

Celebrating Christmas as a religious, as opposed to secular, holiday, necessarily entails professing, proclaiming, or believing that Jesus of Nazareth, born in a manger in Bethlehem, is the Christ, the Messiah. If the government celebrates Christmas as a religious holiday (for example, by issuing an official proclamation saying: "We rejoice in the glory of Christ's birth!"), it means that the government really is declaring Jesus to be the Messiah, a specifically Christian belief. In contrast, confining the government's own celebration of Christmas to the holiday's secular aspects does not favor the religious beliefs of non-Christians over that of Christians. Rather, it simply permits the government to acknowledge the holiday without expressing an allegiance to Christian beliefs, an allegiance that would truly favor Christians over non-Christians.

492 U.S. at 611–12, 109 S.Ct. 3086. Similarly, the Supreme Court in *Lynch* stated that the inclusion of a nativity scene in a public Christmas display containing several other more secularized figurines had only an "indirect, remote, and incidental" benefit to "one faith or religion or to all religions." 465 U.S. at 683, 104 S.Ct. 1355; *see also Koenick,* 190 F.3d at 267 (concluding that a school holiday on Good Friday does not include a facial denominational preference). It necessarily follows that the legal public holiday of Christmas does not have the primary effect of endorsing Christianity in particular or religion in general.[3]

By giving federal employees a paid vacation day on Christmas, the government is doing no more than recognizing the cultural significance of the holiday. *See County of Allegheny,* 492 U.S. at 601, 109 S.Ct. 3086 ("The government may acknowledge

---

**3.** Ganulin argues that the court should be applying a strict scrutiny analysis because § 6103 grants a sectarian preference to Christians over non-Christians and religion over non-religion. In *Larson v. Valente,* 456 U.S. 228, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982), the Supreme Court stated that where a statute clearly grants a denominational preference, it "must be invalidated unless it is justified by a compelling interest, and unless it is closely fitted to further that interest." *Id.* at 247, 102 S.Ct. 1673 (internal citations omitted). The

Court's conclusion that § 6103 does not promote a sectarian preference forecloses Ganulin's argument that this Court should be applying this strict scrutiny test to determine the constitutionality of § 6103. Further, if true, Ganulin's argument concerning Christmas applies with equal force to closing public buildings for Good Friday. The Sixth Circuit, however, applied the *Lemon* test, not strict scrutiny analysis, to the Good Friday issue in *Granzeier. See* 173 F.3d at 572–76.

Christmas as a cultural phenomenon ...."). The fact that § 6103 may accommodate Christians who wish to engage in religious celebrations of Jesus Christ's birth does not mean that the holiday has an impermissible religious effect. The Supreme Court forcefully has stated "[w]hen the state ... cooperates with religious authorities by adjusting the schedule of public events to sectarian needs, it follows the best of our traditions." *Zorach,* 343 U.S. at 313–14, 72 S.Ct. 679; *cf. Marsh,* 463 U.S. at 812, 103 S.Ct. 3330 (Brennan, J., dissenting, joined by Marshall, J.) (recognizing that government "may to some extent act to facilitate the opportunity of individuals to practice their religion," in an opinion opposing the right of a state legislature to open session with prayer). Moreover, Section 6103 is analogous to Sunday Closing Laws upheld in *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), in that both are recognized to have religious origins but not an impermissible religious effect. The Supreme Court's conclusion in *McGowan* has relevance in the case at bar: "To say that the States cannot prescribe Sunday as a day of rest for these [secular] purposes solely because centuries ago such laws had their genesis in religion would give a constitutional interpretation of hostility to the public welfare rather than one of mere separation of church and State." 366 U.S. at 445, 81 S.Ct. 1101.

### 3. Third Prong—Entanglement

The Supreme Court has stated that entanglement "is a question of kind and degree." *Lynch,* 465 U.S. at 684, 104 S.Ct. 1355. The Court has recognized that interaction between church and state is "inevitable" and therefore, entanglement must be "excessive" to conclude that the Establishment Clause is violated. *Agostini v. Felton,* 521 U.S. 203, 233, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997). Ganulin argues that § 6103 creates excessive entanglement because ensuring that the legal public holiday and the accompanying vacation day for federal employees furthers only secular purposes would require pervasive monitoring. He further argues that the government and religion become "inextricably intertwined" resulting in the "ultimate" excessive entanglement. Plaintiff Richard Ganulin's Memorandum in Opposition to the Government's Motion to Dismiss and the Intervenor's Motion to Dismiss, p.40.

■ The Court finds Ganulin's arguments to be conclusory and inaccurate. Ganulin fails to give any concrete examples of the type of monitoring that is or would be required, nor can the Court think of any. The government's role is limited to declaring December 25th to be a legal public holiday. How federal employees and other citizens choose to observe the holiday is their own concern. The government has no right to or interest in monitoring its citizens to determine if they engage in religious celebrations on Christmas. Section 6103 does not require government participation in religious activities nor does it provide funding for religious activities. *See Koenick,* 973 F.Supp. at 527 (stating the same in regards to allowing public school holiday on the Friday before Easter). In an analogous situation, the Sixth Circuit found that government officials are not required to make religious determinations and there is no entanglement when government officials declare that courthouses and offices will be closed on the Good Friday, the Friday before Easter. *See Granzeier,* 173 F.3d at 574. The same conclusion applies to the declaration of Christmas as a legal public holiday.

### 4. Conclusion on the Establishment Clause

■ The Court holds that under Sixth Circuit and Supreme Court precedent the establishment of Christmas Day as a legal public holiday does not violate the Establishment Clause because it has a valid secular purpose, it does not have the effect of endorsing religion in general or Chris-

tianity in particular, and it does not impermissibly cause excessive entanglement between church and state.[4]

## C. Freedom of Association

Ganulin also argues that 5 U.S.C. § 6103 is unconstitutional because it violates his right to freedom of association. The freedom of association is not enumerated in the Constitution, but arises as a necessary concomitant to the Bill of Right's protection of individual liberty. The Supreme Court has explained the protections afforded by the freedom of association as follows:

> Our decisions have referred to constitutionally protected "freedom of association" in two distinct senses. In one line of decisions, the Court has concluded choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty. In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment-speech, assembly, petition for the redress of grievances, and the exercise of religion. The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties.

*Roberts v. United States Jaycees*, 468 U.S. 609, 617–18, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984) (holding that a state discrimination law which had the effect of requiring the Jaycees to admit women did not violate the freedom of association). The Supreme Court added that the freedom to associate "plainly presupposes a freedom not to associate." *Id.* at 623, 104 S.Ct. 3244.

Ganulin argues that § 6103 impinges on his associational rights because "freedom of association includes the right to have the government not impose Christian religious or Christian cultural beliefs on him." Amended Complaint (doc. # 18), ¶ 32. He argues that the government's celebration of Christmas as a legal public holiday classifies Christian religious and cultural beliefs in a preferred way that impinges on his fundamental rights to believe and associate as a non-Christian. He objects to having the holiday imposed upon him because he alleges that the Christian ideas that underlie the holiday are the kind of ideas that underlie a person's identity and existence. He then argues that because § 6103 impinges upon his rights, the statute can only be upheld if it can survive strict scrutiny analysis. "Infringements on [the right to associate] may be justified by regulations adopted to serve compelling interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Roberts*, 468 U.S. at 623, 104 S.Ct. 3244. Ganulin concludes that the government has no compelling interest.

The error in Ganulin's argument is that his assertions do not state a claim under either type of associational protection described by the Court in *Roberts*. The first type of claim recognizes that the Bill of Rights "must afford the formation and preservation of certain kinds of highly personal relationships a substantial measure

---

4. Defendant–Intervenors also sought the Court to uphold the constitutionality of § 6103 based upon the fabric of society test articulated in *Marsh*. In *Marsh*, the Supreme Court upheld the practice of opening legislative sessions with prayer: "In light of the unambiguous and unbroken history of more than 200 years, there can be no doubt that the practice of opening legislative sessions with prayer has become a part of the fabric of our society." 463 U.S. at 792, 103 S.Ct. 3330. Due to the Court's analysis under the modified *Lemon* test and the fact that the Sixth Circuit has applied the *Marsh* precedent only in regards to other cases involving public prayer and public invocation, the Court declines to analyze § 6103 under *Marsh*.

of sanctuary from unjustified interference by the State." *Id.* at 618, 104 S.Ct. 3244. The Supreme Court gives as examples of protected relationships: marriage (*Zablocki v. Redhail*, 434 U.S. 374, 383–86, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978)), childbirth (*Carey v. Population Servs. Int'l*, 431 U.S. 678, 684–86, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977)), and cohabitation with relatives (*Moore v. East Cleveland*, 431 U.S. 494, 503–04, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (plurality opinion)). *See id.* The second type of protected associations correspond to the First Amendment and give a right to "associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Id.* at 622, 104 S.Ct. 3244.

Ganulin does not, and cannot, allege that the government imposes upon him or his family participation with others in religious services and celebrations. His argument, rather, is that his free association rights are being violated by imposing Christian beliefs on him and his family. In this same vein he argues that it is inconsistent for the government to assert that Christmas is a highly secularized holiday and for the Intervenors to state that they intend to attend religious services on Christmas day.

■ The Court does not agree with Ganulin's arguments. Ganulin and his family have the freedom to celebrate, or not celebrate, the religious and the secular aspects of the holiday as they see fit. The Court simply does not believe that declaring Christmas to be a legal public holiday impermissibly imposes Christian beliefs on non-adherents in a way that violates the right to freedom of association. Moreover, the Court finds no inconsistency in the Defendant's and Defendant–Intervenor's arguments. The Sixth Circuit has stated in reference to Christmas Day and Thanksgiving Day that "holidays are established for the convenience of its citizens, and that convenience often is caused by individual motivations that may be a mix of secular and religious." *Granzeier,* 173 F.3d at 575. The government can establish legal public holidays for secular reasons and its citizens can choose to celebrate the holidays in a religious manner without contradiction.

Therefore, the Court holds that Ganulin cannot establish as a matter of law that the enactment of Christmas Day as a legal public holiday violates his right to freedom of association.

**D. Equal Protection**

■ Ganulin's last claim is that the establishment of Christmas Day as a legal public holiday violates his right to equal protection under the law. Laws that neither burden a fundamental right nor target a suspect class are upheld under equal protection analysis so long as they bear a rational relationship to some legitimate end. *See Romer v. Evans,* 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). Ganulin has asserted his status as a citizen and a taxpayer in his Amended Complaint. He is not a member of a suspect class to the extent that 5 U.S.C. § 6103 can be said to target him. Therefore, unless the Court finds that the law impinges on his fundamental rights of freedom of association or to free exercise of religion—a claim not asserted by Ganulin in his Amended Complaint or in his briefs—then § 6103 will be upheld if it bears a rational relationship to a legitimate end.

The Court has already held that Ganulin's fundamental right of freedom of association is not impinged by § 6103. Further, the Court has found legitimate secular purposes for establishing Christmas as a legal public holiday. To again quote the dissenting judges in a case upholding the inclusion of a creche in a public holiday display: "When government decides to recognize Christmas day as a public holiday, it does no more than accommodate the calendar of public activities to the plain fact that many Americans will expect on that day to spend time visiting with their families, attending religious services, and perhaps enjoying

some respite from pre-holiday activities." *See Lynch,* 465 U.S. at 710, 104 S.Ct. 1355 (Brennan, J. dissenting, joined by Marshall, Blackmun, and Stevens, JJ.); *see also County of Allegheny,* 492 U.S. at 611–12, 109 S.Ct. 3086 ("[C]onfining the government's own celebration of Christmas to the holiday's secular aspects ... simply permits the government to acknowledge the holiday without expressing an allegiance to Christian beliefs."); *Zorach,* 343 U.S. at 313–14, 72 S.Ct. 679 ("When the state ... cooperates with religious authorities by adjusting the schedule of public events to sectarian needs, it follows the best of our traditions.").

 Accordingly, the Court holds the establishment of Christmas Day as a legal public holiday does not violate fundamental rights nor discriminate based upon suspect criterion. The United States, moreover, has a rational, secular reason for the establishment of the holiday. The Court, therefore, holds that Ganulin cannot establish as a matter of law that 5 U.S.C. § 6103 violates his rights to equal protection under the law.

### IV. CONCLUSION

The Court finds as a matter of law that on the facts alleged Plaintiff Ganulin cannot support his claims that the establishment of Christmas Day as a legal public holiday violates the Establishment Clause or his rights to freedom of association and equal protection under the United States Constitution. Therefore, for the reasons explained above, the Defendant's Motion to Dismiss (doc. # 21) and the Defendant–Intervenors' Motion to Dismiss (doc. # 22) are hereby **GRANTED.**

IT IS SO ORDERED.